UNITED STATES of America, Plaintiff,

v.

Robert S. HART, Defendant.

No. F CR 86–3.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Nov. 4, 1987.

David H. Miller, Asst. U.S. Atty., Fort Wayne, Ind., for plaintiff.

Charles E. McFarland, Newton Falls, Ohio, for defendant.

## ORDER

WILLIAM C. LEE, District Judge.

Defendant Robert S. Hart was charged in a three count indictment with the willful attempt to evade taxes in 1981, 1982 and 1983. Hart had taxable income in all three years. Hart falsely claimed that he was

exempt from withholding and failed to file 1040 tax returns. Hart is a tax protester; he claims that during the years in question he was not "liable" under the Internal Revenue Code. For the reasons which follow, the court will find Hart guilty on all three counts as charged in the indictment.

## I.

### Specific Factual Findings

Due to the excellent cooperation of counsel, this case was tried to the bench in one day on October 19, 1987. Final arguments were heard on October 21, 1987. The court enters the following findings of fact pursuant to Fed.R.Crim.P. 23(c), after having examined the entire record and after having determined the credibility of witnesses.

### A.

### Hart's Employment History

Defendant Hart was employed by the Fisher Body Division of General Motors in Marion, Indiana, in 1956. (Stipulation No. 1). Hart continued as an employee of Fisher Body Division at all relevant times, including 1981, 1982 and 1983. (Stipulation No. 1). Hart's pay records and W–2 wage and tax statements for 1981, 1982 and 1983 show that Hart had income in those years of $44,460.51, $41,967.43 and $51,280.37, respectively. (*See* Government Exhibits 7, 8, 9, 10, 11 and 12; *see also* testimony of Special Agent Ken Matthews).[1]

As an employee of Fisher Body Division, Hart had taxable income in 1977, 1978, 1979 and 1980. In those years, Hart filed correct income tax returns. (*See* Government Exhibits 13, 14, 15 and 16; *see also* testimony of Ken Matthews). Hart's accountant, Delmer McCollum, prepared Hart's tax returns in 1979 and 1980. Hart's 1040 return for the taxable year 1980, which is dated March 3, 1981, shows that Hart sought a refund of $939.86. (*See* Government Exhibit 16). McCollum was not called on by Hart to prepare returns after taxable year 1980.

### B.

### Submission of False W–4s and Failure to File Form 1040s

■ In taxable years 1981, 1982 and 1983, Hart submitted W–4 employee withholding allowance certificates, claiming that he was "exempt," that he did not owe any federal income tax, that he had a right to a full refund of all income tax withheld, and that he did not expect to owe any federal income tax. (*See* Government Exhibits 2, 3, 4, 5 and 6). In previous years, Hart had submitted correct W–4 forms. (Government Exhibit 1; *see also* Government Exhibits 13, 14, 15 and 16). Hart did not file 1040 returns in 1981, 1982 and 1983, as he had in the preceding years. (*See* Government Exhibit 17;[2] *see also* tes-

---

1. The parties stipulated to the authenticity and admissibility of government's exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12. The court appreciates the cooperation of counsel in stipulating to these exhibits.

2. The court conditionally admitted government's exhibit 17 after a fierce evidentiary battle. Exhibit 17 was properly admitted and the court now reaffirms its admission. Exhibit 17 is a signed and sealed certification from the Internal Revenue Service showing that Hart did not file 1040 forms in 1981, 1982 and 1983. The certification is signed by the custodian of the records who conducted a "thorough search" and found no timely filed 1040 forms for 1981, 1982 and 1983. The defendant conceded that exhibit 17 was authentic, *see* Fed.R.Evid. 902(1), (4), but argued that it was not admissible. Exhibit 17's admission is proper under the hearsay exceptions set forth in Fed.R.Evid. 803(8) and (10).

Exhibit 17 shows the absence of a regularly preserved record, the defendant's 1040 forms. Its admission is also supported by the Seventh Circuit's holding in *United States v. Farris,* 517 F.2d 226 (7th Cir.1975). In *Farris,* also a willful evasion case, the court admitted computer printouts to show the absence of tax returns under Fed.R.Crim.P. 27, which provides that the absence of a record may be proved in criminal cases in the same manner as in civil cases. Fed.R.Civ.P. 44(b) clearly supports the admission of exhibit 17, particularly where the exhibit's authenticity is not at issue. Exhibit 17 was properly admitted both under the authority of the Rules of Evidence and the Seventh Circuit's holding in *Farris.* The defendant's primary objection to exhibit 17, that it cannot be cross-examined, is true whenever a hearsay exception is invoked. The court makes the obvious point that it is impossible to prove a negative without such exceptions as those employed here. The

timony of Ken Matthews, Delmer McCollum and Robert Bennett).

As a result of Hart's failure to file 1040s in 1981, 1982 and 1983, the Internal Revenue Service prepared substitute 1040 returns in those years. (Government Exhibits 31, 32 and 33). The existence of these substitute 1040 returns is reflected in a document known as an individual master file. (Defendant's Exhibit A). The individual master file shows that substitute 1040 returns were filed by the government upon Hart's failure to file; it does not show that Hart timely filed 1040 returns.[3]

### C.

*Advocating Nonpayment of Taxes*

During the period of time between 1981 and 1983, Hart began to talk to his neighbors about the nonpayment of taxes. Hart told neighbor Charles Pritchett that payment of taxes was unconstitutional. (Testimony of Charles Pritchett). Hart gave Pritchett an organizational newsletter regarding the nonpayment of taxes. Hart told another neighbor, Betty Pence, that she could join a group (which had attorneys) and would not have to pay taxes. (Testimony of Betty Pence).

### D.

*Correspondence with the Internal Revenue Service*

Hart first claimed that he was "exempt" on a W-4 on February 12, 1981. (*See* Government Exhibit 2). On May 8, 1981, the Internal Revenue Service sent Hart a letter regarding his newly claimed exemption. (Government Exhibit 18). The letter was sent to determine whether Hart's exemption from withholding was proper and to request more information. (Government Exhibit 18). Hart wrote back on May 18, 1981, saying that "I am completely satisfied that I am 'exempt'". (Government Exhibit 18). The government wrote Hart again on November 13, 1981, requesting further information. (Government Exhibit 19). Hart wrote back on November 23, 1981, questioning the constitutionality of a section referred to in the government's letter. (Government Exhibit 19).

Satisfied that the W-4 was false, the Internal Revenue Service wrote to Hart's employer, Fisher Body Division, on December 14, 1981, instructing it to disregard the exemption claimed in the W-4 filed for calendar year 1981 and to withhold tax as if Hart were single, claiming one withholding allowance. (Government Exhibit 20). Hart was notified of this action in a letter dated December 14, 1981. (Government Exhibit 21). As noted earlier, Hart claimed that he was exempt again in 1982, inspiring the Internal Revenue Service to again question his claimed exemption in a letter dated August 10, 1982. (Government Exhibit 22). Hart responded to this letter, indicating some confusion, and the Internal Revenue Service sent another letter on September 4, 1982, again asking Hart to explain his exempt status. (Government Exhibits 23 and 24).

The same process took place in 1983. (Government Exhibits 25 and 26). The IRS disallowed the claimed exemption in 1983 as it had in 1981 and notified Hart by letter dated August 15, 1983 that Fisher Body had been directed to disregard Hart's claim that he was exempt and to withhold as if he was single and claiming one allowance.

only way the government can show that no returns were filed is to have someone conduct a search and say so. Both the Rules of Evidence and the *Farris* decision sensibly allow the government to prove negatives through the submission of documents like exhibit 17.

3. The individual master file was introduced as a red herring by Hart to suggest that he in fact filed 1040 returns. After careful examination of the document, in conjunction with government exhibits 31, 32 and 33, and after carefully evaluating the testimony of Ken Matthews, the court concludes that the individual master file simply refers to the substitute returns prepared by the Internal Revenue Service. See, for example, locator number 4921028800102 on the substitute return for 1981, which is referred to on page four of the individual master file. The substitute returns are identified by document locator numbers which are specifically referred to on the individual master file. Hart did not file 1040 returns in 1981, 1982 and 1983 and his lawyer's argument that his filing of W-2s in those years constitutes the timely filing of a return for the purposes of § 7201, is rejected.

(Government Exhibit 27). On August 22, 1983, Hart wrote to the Internal Revenue Service, complaining that the W-4 form was incomplete and deceptive, arguing that he was not a person liable within the meaning of the Internal Revenue Code, and asserting that the main function of the Internal Revenue Service is to encourage compliance. (Government Exhibit 28). By letter dated April 17, 1984, the Internal Revenue Service again denied Hart's W-4 exemption claimed on January 3, 1984. (Government Exhibit 29). Hart responded to this letter by sending the Internal Revenue Service an affidavit, in which he stated the following:

I, ROBERT S. HART, BEING DULY SWORN, DEPOSES [sic] AND SAYS:

1. I am endowed by my Creator with numerous inalienable rights which are protected by the United States Constitution, and which I have never knowingly or intentionally waived with regard to [sic] what I have been misled into believing was a compulsory duty to file a "form 1040" or "income tax return".

*　*　*　*　*　*

3. That in addition to the aforesaid warnings, I have also been influenced by the pressure of widespread rumors and misinformed public opinion, and the advice and assurances of lawyers, C.P.A.s and income tax preparers which misled me to believe the 16th Amendment of the United States Constitution authorized Congress to impose a tax directly on my income, and also a legal duty and obligation upon me to file a "form 1040" or "income tax return".

*　*　*　*　*　*

5. That in addition to the aforesaid warnings, rumors, misinformed public opinion and the advice and assurances of lawyers, C.P.A.s and income tax preparers, the common and widespread practice of employers who automatically and indiscriminately withhold "income taxes" from the paychecks of their employees without their permission, further misled me to believe that every person, including myself, was subject to and liable for "income taxes".

*　*　*　*　*　*

7. That as a result of the aforesaid warnings, rumors, misinformed public opinion, and the advice and assurances of lawyers, C.P.A.s and tax preparers, and the withholding of "income taxes" from paychecks, and the IRS's public display and proferring of "form 1040" in banks and post offices, I, therefore, unwittingly as a result of fear, intimidation and having been misled into thinking and believing that I was subject to and liable for the income tax and that I had a legal duty and obligation to file a "form 1040", did fill out, sign and send to the IRS during each of several years past, a "form 1040".

*　*　*　*　*　*

9. That at no time was I ever notified or informed by the IRS nor by any of its agents or employees, nor by any lawyer, C.P.A., or tax preparer of the fact that [sic] only authorized an indirect or excise tax in accordance with Article I, Section 8 of the United States Constitution, and that it does not authorize a direct tax on anyones or anyone's income.

*　*　*　*　*　*

13. That the only reason why I sent any "form 1040" to the IRS during the past several years is because I was ignorant and misinformed as to the truth regarding the income tax and the 16th Amendment "as correctly interpreted" by the United States Supreme Court in the aforementioned Brushaber case, and because I was misled, deceived and intimidated by the pressure of IRS's alarming and threatening propaganda and resulting misinformed public opinion and the incorrect advice and assurances of lawyers, C.P.A.s and tax preparers all of which influenced and caused me to believe that I had a legal duty and obligation to file a "form 1040".

14. That I have recently examined sections 6001, 6012 and 7203 of the Internal Revenue Code (Title 26 U.S.C.A.) and I am now convinced and satisfied that I am not now and never was any such

person or individual covered by, referred or subject to or within the legal meaning and intent of said sections.

15. That with reliance upon the aforementioned Supreme Court rulings and upon my constitutionally protected 5th and 9th Amendments [sic] Rights to lawfully contract and work and to lawfully acquire and possess property, I am convinced and satisfied that I am not now and never was subject to or liable for any income tax, and that I have absolutely no legal duty or whatsoever [sic] to file any "form 1040" or make any "income tax return", or pay any income tax, or keep any records or supply any information to the IRS.

16. That by reason of the aforestated facts, I do hereby exercise my legal right to rescind and cancel and to render null and void for any and all purposes each and every one of all so-called "income tax returns" or "forms 1040" which at any time past I might have ever caused to be signed with my name or sent to the IRS.

(*See* Government Exhibit 29). The Internal Revenue Service again wrote to Hart on March 7, 1984. (Government Exhibit 30). In reponse, Hart sent back an "affidavit," and "affidavit of revocation," and a "notice of withdrawal of form W-4." In these documents Hart reaffirmed his position that he was exempt, rescinded his signature on the W-4 submitted on January 3, 1984, and claimed that he was not under the jurisdiction of the Internal Revenue Code or the federal government. (Government Exhibit 30).

The end result of these various machinations is that only $2,370.89 was withheld in 1981 and that Hart had $7,976.52 in tax due and owing. (Government Exhibit 34). In 1982, no tax was withheld and Hart had $8,644.34 in tax due and owing. (Government Exhibit 34). In 1983, $4,912.40 was withheld and Hart had $6,288.60 in tax due and owing. (Government Exhibit 34).

## II.

### *Defendant's Motion to Dismiss the Indictment*

■ Before going on to the conclusions of law, the court will briefly deal with the defendant's motion to dismiss the indictment. The defendant's lawyer made this motion during his opening statement. Rule 12(b) of the Federal Rules of Criminal Procedure provides that certain motions "must be raised prior to trial ..." Among the motions which must be raised prior to trial are those based on defects in the indictment. Rule 12(b)(2). By waiting until the opening statement to challenge the sufficiency of the indictment, the defendant waived any and all defenses and objections based upon the sufficiency of the indictment. Fed.R.Crim.P. 12(f). *See also* Wright, *Federal Practice and Procedure: Criminal 2nd,* § 193 (1982).

■ Even if the sufficiency of the indictment had been timely challenged the court would have denied the defendant's motion to dismiss the indictment. An indictment is sufficient "if it contains the elements of the offense charged and adequately informs the defendant of the specific charges against him, enabling him to prepare a defense for trial and permitting him to plead an acquittal or conviction in order to bar any future prosecution for the same offense." *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Conley,* 826 F.2d 551, 559 (7th Cir.1987); *United States v. Galiffa,* 734 F.2d 306, 312 (7th Cir.1984). The defendant's objection to the indictment is that it does not clearly define which crime contained in § 7201 of the Internal Revenue Code is being charged: the crime of willfully attempting to evade or defeat any tax, or the crime of willfully attempting to evade or defeat the *payment* of any tax. *See United States v. Dack,* 747 F.2d 1172, 1174 (7th Cir.1984). A reading of the indictment makes it abundantly clear that the indictment adequately informs the defendant that he is being charged with the willful attempt to evade or defeat any tax.[4]

---

4. All three counts specifically charge the defendant with "willfully and knowingly attempt[ing] to evade and defeat said income tax due and owing to the United States...." The indictment very clearly specifies how the defendant attempted to defeat taxes in each year (i.e., by

Accordingly, even if the defendant had raised a timely challenge to the sufficiency of the indictment, the defendant's challenge would have failed.

### III.

#### Conclusions of Law

■ The government has the burden to prove beyond a reasonable doubt the following elements: (1) the existence of a tax deficiency; (2) an affirmative act constituting an evasion or attempted evasion of the tax; and (3) willfulness. *Sansone v. United States*, 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965); *United States v. Conley*, 826 F.2d 551, 556 (7th Cir.1987); *United States v. Foster*, 789 F.2d 457, 459 (7th Cir.1986). As the following discussion will show, the government met its burden of proving each of these elements beyond a reasonable doubt.

■ Before going on to discuss each of the elements of § 7201, the court will deal with an argument raised during trial on numerous occasions: the spurious argument that the Tax Code nowhere states that a person is liable ... for nonpayment of taxes. This argument is nonsensical. The statutory scheme contained in Title 26 of the United States Code, and more specifically, § 7201, shouts out both civil and criminal liability. With respect to the specific crime the defendant is charged with in this case, the Seventh Circuit held in *United States v. Dack*, 747 F.2d at 1174, that when a taxpayer fails to file a return and the government can show a tax liability pursuant to the provisions of the Code, then a tax deficiency within the meaning of § 7201 arises by operation of law on the date the return is due. Neither of the defendants convicted in *United States v. Foster*, 789 F.2d 457 (7th Cir.1986) or *United States v. Copeland*, 786 F.2d 768 (7th Cir.1986), could have been convicted had liability not been inherent in the statutory scheme, and particularly in § 7201. In *McLaughlin v. Commissioner of Internal Revenue Service*, 832 F.2d 986, 987 (7th Cir.1987), the Seventh Circuit held that "the notion that the federal income tax is contractual or otherwise consensual in nature is not only utterly without foundation but, despite McLaughlin's protestations to the contrary, has been repeatedly rejected by the courts. *See, e.g., Newman v. Schiff*, 778 F.2d 460, 467 (8th Cir.1985); *United States v. Drefke*, 707 F.2d 978, 981 (8th Cir.), *cert. denied sub nom., Jameson v. United States*, 464 U.S. 942, 104 S.Ct. 359, 78 L.Ed.2d 321 (1983)." The defendant's spurious argument that the Tax Code does not provide for liability is the kind that prompted the *McLaughlin* court to declare that "tax protesters, those who persist in pressing losing arguments in an attempt to challenge the legitimacy of the federal income tax, are thorns in the side of the federal judiciary." *McLaughlin*, at 986–87.

### A.

#### The Existence of a Tax Deficiency

■ The first element which the government must prove beyond a reasonable doubt is that a tax deficiency existed in 1981, 1982 and 1983. *Foster*, 789 F.2d at 459. There is abundant evidence to support this element. In all three years, the defendant had substantial income. In all three years, the defendant falsely claimed that he was exempt. In the defendant's correspondence with the Internal Revenue Service he repeatedly stated (for various reasons) that he did not have to pay taxes. As a result of the false W–4 forms submitted in 1981, 1982 and 1983, the Internal Revenue Service did not withhold the proper amounts, giving rise to a tax deficiency.

More to the point, Robert Bennett testified that defendant Hart had tax liabilities in 1981, 1982 and 1983 of $7,976.52, $8,644.34 and $6,288.60, respectively. Hart did not submit 1040 forms in 1981, 1982 or 1983. The accountant who prepared his

---

failing to make tax returns, by supplying false W–4 forms to Fisher Body, by writing to the Internal Revenue Service and claiming that he was exempt). It would not be easy to draft a more sufficient indictment. The language leaves no room for doubt as to which crime under § 7201 is being charged.

tax returns in 1979 and 1980 did not prepare returns in 1981, 1982 or 1983. All of this evidence, some directly and some circumstantially, points to the existence of a tax deficiency in all three years.

### B.

### *An Affirmative Act Constituting an Evasion or Attempted Evasion of the Tax*

■ The second element which the government must prove beyond a reasonable doubt is an affirmative act constituting an evasion or attempted evasion of tax. There is an abundance of evidence on this element. In all three years in question, Hart falsely claimed on his W–4 forms that he was exempt. In all three years Hart also failed to file 1040 returns. This evidence alone satisfies the affirmative act element of § 7201. *See, e.g., Foster,* 789 F.2d at 459, 461–62; *Copeland,* 786 F.2d at 770. By filing false W–4s and by failing to file 1040 forms, Hart affirmatively acted to evade or attempt to evade tax.

There is much more evidence supporting this second element. Hart's correspondence with the Internal Revenue Service during 1981, 1982 and 1983, makes it clear that Hart's claim that he was exempt was an affirmative act and not a mistake. In his letters, Hart repeatedly stated that he was exempt and even went so far as to attempt to rescind and revoke all prior W–4s and tax returns which would imply that the Internal Revenue Service could require him to pay taxes. By falsely claiming that he was exempt, by failing to file 1040 returns, and by pressing his position even after being confronted by the Internal Revenue Service, Hart affirmatively acted to evade taxes.

### C.

### *Willfulness*

■ The last element which the government must prove beyond a reasonable doubt is that Hart acted willfully. *Foster,* 789 F.2d at 459. To show that Hart acted willfully, the government must demonstrate that he intentionally violated a known legal duty—the government is not required to show any bad purpose on Hart's part. *Id.* at 461. Mere negligence will not support a conviction under § 7201. *Conley,* 826 F.2d at 561. Rather, the conduct must be "done voluntarily to avoid a legal duty." *Id.*

■ In proving willfullness, the government is not required to satisfy a subjective test, a test requiring an inquiry into the defendant's actual state of mind. Whatever may be the theoretical objections, the Seventh Circuit has clearly rejected the subjective test employed by a number of other circuits, *see, e.g., United States v. Aitken,* 755 F.2d 188 (1st Cir.1985) and *United States v. Phillips,* 775 F.2d 262 (10th Cir.1985), and instead follows an "objectively reasonable" test. *Foster,* 789 F.2d at 461. Under the objective test the mistake of law defense is extremely limited, "a mistake on the defendant's part must be 'objectively reasonable.' " *Foster,* 789 F.2d at 461 (*quoting United States v. Moore,* 627 F.2d 830, 833 (7th Cir.1980), *cert. denied,* 450 U.S. 916, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981)). *Accord United States v. Witvoet,* 767 F.2d 338, 340 (7th Cir.1985).

Under the objective test (and perhaps under the subjective test as well) the government has proved beyond a reasonable doubt that the defendant acted willfully in evading or attempting to evade taxation. That the defendant knew that he had a legal duty to file correct W–4 forms and to file 1040 forms is made clear by the fact that he filed correct W–4 forms and 1040 forms in 1977, 1978, 1979 and 1980. By filling out correct W–4 forms and by filing 1040s, Hart manifested his knowledge that he had a duty to do so. Hart clearly knew (both the objective and subjective tests would support this) that he had a legal duty to file accurate W–4 forms and to file 1040 returns.

The evidence shows that Hart intentionally violated this known legal duty when he filed false W–4 forms in 1981, 1982 and 1983, and when he failed to file 1040 forms in those years. Hart advocated the nonpayment of taxes to his neighbors. That

he attempted to persuade his neighbors that they too could evade taxation is evidence that his own attempt to evade taxation was willful.

Lastly, and perhaps most convincingly, Hart's correspondence with the Internal Revenue Service in 1981, 1982 and 1983, demonstrates that he acted willfully. There can be no doubt that in all three years Hart intentionally claimed that he was exempt, knowing from his experience in previous years, that he was not exempt. Hart knew that he had a legal duty to file accurate W–4 forms. He nevertheless intentionally filed false forms in all three years. Even after being confronted by the Internal Revenue Service, Hart foolishly pressed the position that he was exempt.

■ In closing arguments, Hart's attorney argued that Hart was "convinced" that ... he did not have to pay taxes. In Hart's correspondence with the Internal Revenue Service he attempts to explain why he is exempt. Even if his explanations are sincere, even if he (subjectively) believed them, they are objectively unreasonable and therefore, cannot serve as a foundation for a mistake of law defense. *United States v. Moore*, 627 F.2d at 833. As the Seventh Circuit has stated, "a mistake of law defense is *extremely limited* ..." *Foster*, 789 F.2d at 461 (emphasis added). Among the arguments set forth by Hart in his correspondence are the following: that the sixteenth amendment of the United States Constitution does not authorize Congress to impose a tax upon income; that tax laws are unconstitutional; that one has no legal duty to file a form 1040 or to make any income tax returns; that individuals are not required to pay income tax; and

that there is no liability for failure to pay income tax. These "tired arguments" simply amount to the obdurate refusal of tax protesters to acknowledge the law and they are objectively unreasonable. *United States v. Buckner*, 830 F.2d 102, 103 (7th Cir.1987). Under the objectively reasonable test Hart's mistake of law defense completely falls apart.

■ Hart willfully attempted to evade taxation. He intentionally violated known legal duties, the likely effect of which would mislead or conceal. *See Sansone v. United States*, 380 U.S. 343, 353, 85 S.Ct. 1004, 1011, 13 L.Ed.2d 882 (1965); *Spies v. United States*, 317 U.S. 492, 499–500, 63 S.Ct. 364, 368–369, 87 L.Ed. 418 (1943). While Hart might argue that he was sincere, he was sincerely wrong and any sincerity on his part does not translate into a lack of willfullness. As with the other elements, the court is completely satisfied that the government has proven beyond a reasonable doubt that Hart acted willfully in attempting to evade taxation in 1981, 1982 and in 1983.[5]

## IV.

### *Hart's Motion for Judgment of Acquittal*

The court denied Hart's Fed.R.Crim.P. 29 motion for judgment of acquittal, made at the close of the evidence. The test which the court must use in ruling on a motion for acquittal,

... is whether at the time of the motion there was relevant evidence from which the [factfinder] could reasonably find [the defendant] guilty beyond a reasonable doubt, viewing all the evidence in the light most favorable to the Govern-

---

5. Defendant Hart's lawyer cited many authorities, all of which the court has carefully examined. Many of these authorities are not cited in this opinion simply because they add nothing to an analysis of the issues in this case. Most of the cases cited by Hart's lawyer stand for exceedingly general and fundamental legal propositions, but have no factual similarity to this case. *United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971) and *United States v. Anzalone*, 766 F.2d 676, 680–81 (1st Cir.1985), for example, were cited for the proposition that penal laws should be strictly

construed because criminal punishment represents moral condemnation. The court agrees completely that penal laws should be strictly construed and that all doubts should be resolved in favor of defendants, but that general proposition adds nothing to this case. Neither *Bass* nor *Anzalone* had anything to do with tax evasion and even when defendant Hart is given the benefit of all doubts, it remains abundantly clear that he is guilty of willfully attempting to evade taxation under § 7201 in 1981, 1982 and 1983.

ment ... bear[ing] in mind that "it is the exclusive function of the [factfinder] to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences."

*United States v. Marquardt,* 786 F.2d 771, 780 (7th Cir.1986) (quoting *United States v. Blasco,* 581 F.2d 681, 684 (7th Cir.), *cert. denied,* 439 U.S. 966, 99 S.Ct. 456, 58 L.Ed. 2d 425 (1978)). The standard for a judgment of acquittal is more exacting than the standard for a decision finding the defendant not guilty, since the evidence must be viewed in a light most favorable to the government. As the court's "Conclusions of Law" show, Hart's motion for a judgment of acquittal was correctly denied at the close of the evidence.

### V.

#### *Conclusion*

The government easily proved Hart guilty beyond a reasonable doubt on all three counts contained in the indictment. There were tax deficiencies in all three years and Hart willfully acted to evade or attempt to evade taxation. Accordingly, the court finds the defendant GUILTY on all three counts as charged in the indictment.