[No. B176369. Second Dist., Div. Eight. May 25, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
ABEL MOJICA, Defendant and Appellant.

**COUNSEL**

Stephen M. Lathrop, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Robert F. Katz and Roy C. Preminger, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

RUBIN, J.—Abel Mojica appeals from the judgment entered after a jury convicted him of felony income tax evasion. (Rev. & Tax. Code, § 19706.) Because the jury was not instructed that it had to find the existence of a tax deficiency as an element of the offense, we reverse.

### FACTS AND PROCEDURAL HISTORY

In 1994, Abel Mojica opened a small market on Verdugo Road in Los Angeles, where he sold soda pop, candy, produce, and lottery tickets. Mojica filed state income tax returns for 1994 and 1995, and in 1994 he had gross sales of $97,303. He did not file returns for the 1996 or 1997 tax years, however, and was charged with two felony counts for failing to file his returns in those years with the intent to evade the payment of taxes. (Rev. & Tax. Code, § 19706.)[1]

In March 1995, Mojica obtained approval from the United States Department of Agriculture (USDA) to redeem food stamps. As part of his training, Mojica was taught that he could accept food stamps for purchases made at his market only, and could not exchange food stamps for cash. In August 1997, the USDA disqualified Mojica from further participation in the food stamp program because, in violation of federal regulations, his food stamp redemptions greatly exceeded the amount of his food sales. USDA records showed that Mojica redeemed food stamps totaling $323,400 for all of 1996 and $94,700 from January through August of 1997. The USDA then referred the matter to California's Franchise Tax Board (FTB) for investigation.

An FTB agent's analysis of Mojica's bank records showed that in 1996, Mojica deposited into his account $315,800 in food stamp redemptions and $75,130 in cash. For 1997, Mojica deposited into his account $90,700 in food stamp redemptions, $94,870 in cash, and $46,653.09 in checks. Under California's tax laws, food stamps are considered the equivalent of money, and when food stamps are redeemed by a merchant, they are considered to be cash income. As part of his obligation to remit sales tax payments to the state, Mojica also reported his gross sales. In 1996, he reported gross sales of around $64,000, but for 1997 the amount he reported jumped to $291,200. Mojica's obligation to file a tax return irrespective of his actual tax liability was triggered by a gross income of approximately $20,000. The FTB sent Mojica notices that he was required to file tax returns for 1996 and 1997, but Mojica never complied.

The FTB agent interviewed Mojica, who said he had since closed his market due to poor sales. Mojica told the agent that half the food stamps he

---

[1] All further undesignated section references are to the Revenue and Taxation Code.

deposited into his account during 1996 and 1997 came from his brother Humberto, who was also a grocer. According to Mojica, he was doing Humberto a favor, and that in exchange for the food stamps, he would give Humberto signed blank checks. Mojica did not believe he owed any taxes for those years. Mojica said he commingled his personal and business expenses and had no records of any kind.

The evidence also showed that Mojica bought an apartment building in 1996 and another property that included a business and a house in 1997, each with a down payment of $14,000. His bank records showed that Mojica made mortgage payments on both properties. The fact that Mojica bought real property and made mortgage payments indicated that Mojica had income.

The prosecution's theory was that Mojica did not file tax returns in part to cover up his food stamp crimes and in part to avoid paying taxes on the money he made from that scheme. Mojica testified that none of the food stamp money went to him. Instead, as a favor to his brother, he took the food stamps and paid Humberto with checks that matched the amounts of the food stamps Mojica would eventually deposit in his account. According to Mojica's expert accounting witness, such transactions were nothing more than nontaxable exchanges of capital. Mojica also testified that he did not file tax returns in 1996 and 1997 because he made no profit in those years, that he was unaware of the various food stamp redemption regulations, and that he operated his real properties at a loss. In short, Mojica did not have the intent to evade his tax obligations, and did not file tax returns because he thought he owed no taxes. At most, therefore, Mojica believes he was guilty of the lesser included misdemeanor offense of failing to file tax returns. (§ 19701.)

The jury convicted Mojica of both felony counts (§ 19706) for the 1996 and 1997 tax years. He moved for a new trial, contending that the jury was never asked to consider, and the prosecution did not prove, that he actually owed taxes for those years. That motion was denied. In anticipation of the sentencing hearing, the FTB determined that Mojica's unpaid tax liability for 1996 and 1997 was $53,675. When penalties, interest, and the costs of investigation were added on, the total rose to $135,178.91, according to the FTB report. The court suspended the imposition of sentence and placed Mojica on formal probation for five years. Mojica was also ordered to make restitution to the FTB.

Mojica has appealed. At issue is whether the existence of a tax deficiency—that Mojica in fact owed some taxes for the years in question—was

an element of the felony tax evasion charge, and, if so, whether the court's failure to instruct the jury on that element was reversible error.[2]

## DISCUSSION

1. *The Existence of a Tax Deficiency Is an Element of a State Law Felony Tax Evasion Charge*

 A. *The Federal and California Statutes*

Mojica was convicted of violating section 19706, which provides in relevant part: "Any person . . . who, within the time required by or under the provisions of this part, willfully fails to file any return or to supply any information with intent to evade any tax imposed by [the income tax laws], or who, willfully and with like intent, makes, renders, signs, or verifies any false or fraudulent return or statement or supplies any false or fraudulent information, is punishable by imprisonment in the county jail not to exceed one year, or in the state prison, or by fine of not more than twenty thousand dollars ($20,000), or by both the fine and imprisonment, at the discretion of the court, together with the costs of investigation and prosecution."

 Neither section 19706 nor the federal felony tax evasion statute (26 U.S.C. § 7201) mentions a tax deficiency. The federal statute provides in relevant part: "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, . . . be guilty of a felony . . . ." However, the federal statute has long been interpreted to require proof that the alleged tax evader actually owed some taxes. (See *Lawn v. United States* (1958) 355 U.S. 339, 361 [2 L.Ed.2d 321, 78 S.Ct. 311]; *United States v. Dack* (7th Cir. 1984) 747 F.2d 1172, 1174 (*Dack*), and cases cited therein.) The tax deficiency requirement appears to arise from the federal statute's use of the phrase "tax imposed by this title." "Section 7201 is broadly worded, reflecting the fact that willful tax evasion can occur at any stage of the IRS's complex process for determining, assessing, and collecting federal taxes. But whether a taxpayer is charged with tax evasion by willfully attempting to defeat the IRS's ascertainment of

---

[2] Mojica's appellate brief and new trial motion framed the issue this way: Because the prosecution did not show the existence of a tax deficiency, the prosecution failed to prove that Mojica acted with the intent to evade taxes. We asked for and received supplemental briefing on what we believe is the actual issue implied by Mojica's argument: whether the existence of a tax deficiency is an element of the offense charged. Because we hold that it is, and that the failure to so instruct the jury was reversible error, we do not reach the other issues raised by Mojica—whether there was sufficient evidence to show he had the required intent and whether the trial court erred by instructing the jury that before considering whether Mojica was guilty of the lesser included offense of misdemeanor tax evasion (§ 19701), the jury first had to unanimously acquit Mojica of the two felony counts.

his tax liability, or by willfully attempting to evade the payment of a tax, the government must prove that the tax was in fact 'imposed by this title,' *in other words, a tax deficiency.* [Citation.]" (*U.S. v. Silkman* (8th Cir. 1998) 156 F.3d 833, 835 (*Silkman*), italics added.)

This interpretation makes sense. The federal tax evasion statute applies to the underpayment or nonpayment of taxes and to the failure to file a return. Before an alleged tax dodger can be convicted of *underpaying* or failing to *pay* a tax, it seems obvious that a tax must actually be owed. Because this statute is aimed at both evading a tax, and evading the payment of a tax, well accepted rules of statutory construction require that the phrase "tax imposed by this title" receive the same construction whether tax evasion occurs through failing to file a return, underreporting income by supplying false information, or refusing to make tax payments that are due and owing. (*Black v. Department of Mental Health* (2000) 83 Cal.App.4th 739, 747–748 [100 Cal.Rptr.2d 39] [rules for interpreting federal statutes are similar to rules for interpreting California statutes; the words of a statute must be construed in context and statutes must be harmonized internally and externally].) When liability is based on the failure to file a return, a tax deficiency arises by operation of law on the date the return should have been filed (*Dack, supra,* 747 F.2d at p. 1174), and the government can prove a tax deficiency by showing that the taxpayer had unreported taxable income. (*United States v. Beall* (7th Cir. 1992) 970 F.2d 343, 346; *United States v. Chesson* (5th Cir. 1991) 933 F.2d 298, 306; *United States v. Hart* (N.D.Ind. 1987) 673 F.Supp. 932, 938.) No specific amount of tax liability need be shown. (*United States v. Bender* (9th Cir. 1979) 606 F.2d 897, 898.) The taxpayer may then establish as a defense that there was no tax due and owing, for example by evidence of unclaimed deductions. (*Silkman, supra,* 156 F.3d at p. 836.)

The jury in this case was instructed with CALJIC No. 7.66, which, like section 19706, does not mention the existence of a tax deficiency.[3] Mojica contends that we should interpret section 19706 as the federal courts interpret the federal tax evasion statute, and require the government to prove the existence of a tax deficiency as an element of the offense. Because we

---

[3] CALJIC No. 7.66 states: "[Any person] who, within the time required by or under the provisions of the Franchise and Income Tax Laws, willfully fails to file any tax return or to supply any information with intent to evade any tax imposed by the [Personal Income Tax Law], is guilty of a violation of Revenue and Taxation Code section 19706, a crime. [¶] In order to prove this crime, each of the following elements must be proved: [¶] 1. A person was required to [file a tax return with] [or] [supply the information to] the Franchise Tax Board; [¶] 2. That person failed to [file the tax return] [or] [supply information] within the time required by the Franchise Tax Board; 3. [¶] This failure to [file the tax return] [or] [supply information] within the required time was done with the specific intent to evade a tax; and [¶] 4. That person acted voluntarily and in an intentional violation of a known legal duty."

conclude, *post,* that the federal and state tax evasion statutes are substantially identical, we hold that Mojica is correct.[4]

B. *Because the California and Federal Felony Tax Evasion Statutes Are Substantially Identical, We Must Follow the Federal Interpretation*

■ "Our Legislature has generally followed the federal statutes in designing California's personal income tax system, making federal decisions interpreting substantially identical statutes unusually strong persuasive precedent on construction of our own laws. [Citations.]" *(People v. Hagen* (1998) 19 Cal.4th 652, 661 [80 Cal.Rptr.2d 24, 967 P.2d 563] *(Hagen)* [federal tax law definition of "willfully" applied to former section 19405 (now § 19705), which forbids willfully making and subscribing tax returns and other documents under penalty of perjury without belief the materials are true].) The *Hagen* court also noted that section 19706, along with California's other tax evasion statutes, was modeled after the federal tax laws. In deciding to abide by the federal courts' interpretation of the term "willfully," the *Hagen* court, citing to sections 19701 through 19706, said that "California law, *like its federal model,* provides a graduated scheme of civil penalties and misdemeanor and felony punishment to deter both honest mistakes and willful fraud." (19 Cal.4th at p. 662, italics added.) Uniformity of interpretation was important, the court held, because the income to be reported in a California tax return was generally defined by incorporation of federal tax law and because the higher federal standard of willfulness was designed to

---

[4] Since the time of Mojica's trial, the CALJIC pattern instructions have been superseded by the new California Criminal Jury Instructions (CALCRIM). CALCRIM No. 2801 does require proof of a tax deficiency, stating that "[The People do not have to prove the exact amount of (unreported income/[or] [additional] tax owed). The People must prove beyond a reasonable doubt that the defendant (failed to report a substantial amount of income/[or] owed a substantial amount in [additional] taxes).]"

Although pattern jury instructions are prepared by distinguished legal scholars and provide a valuable service to the courts, they are not the law and are not binding. *(People v. Alvarez* (1996) 14 Cal.4th 155, 217 [58 Cal.Rptr.2d 385, 926 P.2d 365]; *People v. Runnion* (1994) 30 Cal.App.4th 852, 858 [36 Cal.Rptr.2d 203].) Therefore, neither CALJIC No. 7.66 nor CALCRIM No. 2801 governs our analysis, although we certainly agree with CALCRIM No. 2801 to the extent it requires proof of a tax deficiency. We do take issue with the CALCRIM statement that the government must prove the existence of a "substantial" tax deficiency or the failure to report a "substantial" amount of income. CALCRIM's primary authority for this proposition—*United States v. Wilson* (3d Cir. 1979) 601 F.2d 95—no longer appears to be good law and is out of the mainstream of more recent federal jurisprudence. *(United States v. Daniels* (7th Cir. 2004) 387 F.3d 636, 640–641, & fn. 2; *United States v. Holland* (9th Cir. 1989) 880 F.2d 1091, 1095–1096.)

separate the purposeful tax violator from confused or unknowledgeable taxpayers. (*Id.* at pp. 661–662.)[5]

Therefore, under *Hagen,* if section 19706 is substantially identical to 26 United States Code section 7201, we should follow the decisions of federal courts interpreting the federal statute. We believe the two provisions are substantially identical.

The federal felony tax evasion statute applies to "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof . . . ." (26 U.S.C. § 7201.) Willfulness under the federal statute requires some act that shows the motive or specific intent to evade taxes. (*Spies v. United States* (1943) 317 U.S. 492, 494, fn. 2 [87 L.Ed. 418, 63 S.Ct. 364] [interpreting predecessor to 26 U.S.C. § 7201]; *United States v. Doyle* (5th Cir. 1992) 956 F.2d 73, 75.) One way to attempt to evade taxes under the federal statute is acting with the requisite intent when failing to file a return. (*Dack, supra,* 747 F.2d at p. 1174.) Thus, the federal statute has been interpreted to mean that failing to file a tax return while intending to violate a known legal duty, with the intent to evade taxes imposed by the federal income tax laws, is a felony. Section 19706 makes explicit what the federal courts have read into 26 United States Code section 7201, providing that a felony occurs as to "[a]ny person . . . who, . . . willfully fails to file any return . . . with intent to evade any tax imposed by [the state income tax laws]." We, therefore, hold that section 19706 is substantially identical to 26 United States Code section 7201. As a result, we interpret section 19706 to require proof of a tax deficiency as an element of that offense.

Our conclusion is bolstered by the fact that the federal requirement of a tax deficiency in failure to file and other tax evasion cases predates by many years the 1953 enactment of former section 19406, the predecessor to section 19706, as well as several amendments to both provisions.[6] (*Hagen, supra,* 19 Cal.4th at p. 662; *People ex rel. Allstate Ins. Co. v. Weitzman* (2003) 107 Cal.App.4th 534, 562–563 [132 Cal.Rptr.2d 165]; see Historical and Statutory Notes, 61A West's Ann. Rev. & Tax. Code (2004 ed.) foll. § 19706, p. 489;

---

[5] The federal courts have interpreted willfulness in the tax evasion context to mean a voluntary, intentional violation of a known legal duty. The prosecution in *Hagen* argued for the general definition set forth in Penal Code section 7: " 'with a purpose or willingness to commit the act or to make the omission in question.' " (*Hagen, supra,* 19 Cal.4th at p. 658.)

[6] Former section 19406 is nearly identical to section 19706, and we will sometimes refer to those sections interchangeably.

*Elwert v. United States* (9th Cir. 1956) 231 F.2d 928, 932; *O'Brien v. United States* (7th Cir. 1931) 51 F.2d 193, 196.)[7]

Respondent contends that section 19706 is not similar to 26 United States Code section 7201, but instead parallels 26 United States Code section 7203, the federal misdemeanor tax evasion statute, which does not require proof of a tax deficiency as an element of the offense. (*United States v. McCabe* (7th Cir. 1969) 416 F.2d 957, 958.) It arrives at this conclusion by citing to *People v. Smith* (1984) 155 Cal.App.3d 1103 [203 Cal.Rptr. 196] (*Smith*), a pre-*Hagen* decision also holding that the statutory federal tax evasion definition of willfulness applies to California's tax evasion laws.[8] As part of its comparison between the California and federal provisions, the *Smith* court said, "[i]nsofar as it punishes the wilful failure to file a [tax] return or to supply any information, [former] section 19406 parallels 26 United States Code section 7203, except section 19406 also requires an intent to evade taxation." (*Smith*, at p. 1155, fn. omitted.) We reject respondent's reliance on *Smith*. First, *Smith*'s statement was dicta. Second, it was not interpreting former section 19406. Third, and most important, the *Smith* court did not mention another difference between former section 19406 and 26 United States Code section 7203: The California statute included the "any tax imposed by" language found in 26 United States Code section 7201, which is the source of the tax deficiency requirement (*Silkman, supra,* 156 F.3d at p. 835) and which is missing from both the state and federal misdemeanor tax evasion statutes. (§ 19701; 26 U.S.C. § 7203.)[9]

---

[7] We examined the legislative history of these provisions, but found it unhelpful. One legislative memorandum to the Governor noted that, at the time, the failure to file a tax return could be punished as only a misdemeanor, even if the taxpayer acted with the intent to evade paying taxes. (Former § 19401.) The letter to Governor Warren described the need for a felony tax evasion provision, pointing out that the IRS prosecuted more than 90 percent of its cases under the "intention to evade" section of the federal law, as opposed to the section prohibiting perjured tax statements. In contrast, the perjury charge (former § 19405) was "the only felony charge now available to the [FTB] in the prosecution of its cases." (Leg. Mem. to Governor Earl Warren regarding Assem. Bill No. 633 (1953 Reg. Sess.) Apr. 24, 1953.) Implicit in this statement, we believe, is the notion that former section 19406 was designed to fill the same role as its federal counterpart. However, because nothing in that memo referred explicitly to legislative debates or discussions, or indicates that it was considered by the Legislature, the memo cannot be considered part of the legislative history. (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 189 [123 Cal.Rptr.2d 637].)

[8] *Smith* was disapproved on another point in *Baluyut v. Superior Court* (1996) 12 Cal.4th 826, 832–835 [50 Cal.Rptr.2d 101, 911 P.2d 1].

[9] California's misdemeanor tax evasion statute differs from its federal counterpart in another significant way. While a willful violation is required under 26 United States Code section 7203 (*United States v. Burton* (5th Cir. 1984) 737 F.2d 439, 441), section 19701 of our tax code is a strict liability offense that applies regardless of the taxpayer's intent. (*People v. Allen* (1993) 20 Cal.App.4th 846, 850 [25 Cal.Rptr.2d 26].)

Finally, respondent relies on an Arizona decision that refused to interpret that state's nearly identical felony tax evasion statute in line with federal law. The court in *State v. Fendler* (1980) 127 Ariz. 464 [622 P.2d 23] (*Fendler*) considered whether proof of a tax deficiency was required as an element of the offense of a statute that was substantively identical to section 19706.[10] The Arizona appellate court rejected the contention that proof of a tax deficiency was required, but did so by interpreting the phrase "intent to evade" as the source of that requirement. (*Fendler*, at p. 473.) The one decision it cited for that proposition, however, *United States v. Garber* (5th Cir. 1979) 607 F.2d 92 (*Garber*), had nothing to do with the tax deficiency requirement and focused instead on whether the defendant's conduct was willful given that the taxability of the source of his "income"—blood plasma donations—had not been conclusively determined. Looking solely to the Arizona Legislature's intent, the court held that the thrust of the state law offense was to punish those who willfully fail to file returns, not those with taxes due and owing. (*Fendler*, at pp. 473–474.)

Respondent's reliance on *Fendler* is misplaced. First, that court looked to the Arizona Legislature's interpretation of "intent to evade," and, unlike our courts, did not endeavor to determine whether the state and federal provisions were substantially identical, thus calling for application of the federal interpretation. (*Hagen, supra,* 19 Cal.4th at p. 661.) Second, *Fendler* was interpreting the wrong portion of the statute—the "intent to evade" language instead of the "any tax imposed by" language. Third, the source of *Fendler*'s belief that the tax deficiency requirement arose from the "intent to evade" portion of the statute—*Garber, supra,* 607 F.2d 92—in fact said no such thing and never even reached the issue. In short, we believe *Fendler* is both incorrect and inapposite.[11]

---

[10] The statute in question provided, in relevant part: "Any person who, within the time required by or under the provisions of this title, willfully fails to file any return or to supply any information with intent to evade any tax imposed by this title, is punishable by imprisonment [in county jail or state prison]." (Ariz. Rev. Stats., § 43-842.)

[11] A North Carolina appellate court also reached the same conclusion as *Fendler* in *State v. Davis* (1989) 96 N.C.App. 545 [386 S.E.2d 743] (*Davis*). A tax official testified at trial that he could not state the amount of the defendant's tax liability for the years in which the defendant did not file tax returns. The *Davis* court held that it would place an unfair burden on the prosecution to prove the amount of tax owed, holding instead that the state need show only that the defendant was subject to being taxed under the law and willfully attempted to evade the imposition of the tax. (*Id.* at p. 553.) The *Davis* court apparently did not consider the true evidentiary burden in such a case—a mere showing that the defendant earned some taxable income, not proof of the exact amount of tax owed. In this case, the FTB not only had ample evidence that Mojica earned taxable income, it even calculated an estimated tax liability in preparation for Mojica's sentencing hearing. Once the prosecution introduces evidence of taxable income from which a jury could reasonably infer some tax deficiency exists, defendant may establish defensively that because of deductions, exemptions, credits, or otherwise, he in fact owed no taxes. (*Silkman, supra,* 156 F.3d at p. 836.)

## 2. *Failure to Instruct the Jury on the Tax Deficiency Requirement Was Not Harmless Error*

The jury was not instructed that it had to find some tax deficiency before it could convict Mojica of the felony tax evasion counts. Failure to instruct on an element of an offense is subject to harmless error review under the federal *Chapman* standard:[12] we will affirm only if it appears beyond a reasonable doubt that the error did not contribute to the verdict. (*People v. Magee* (2003) 107 Cal.App.4th 188, 194 [131 Cal.Rptr.2d 834].) Respondent contends the error was harmless because the large amounts of taxable income represented by Mojica's food stamp deposits into his bank account overwhelmingly established that he earned taxable income in 1996 and 1997. We agree that the evidence of his taxable income was strong, but still believe the error was not harmless. Once a tax deficiency is established, the defendant can then try to show that he owed no taxes at all by way of unclaimed deductions. (*Silkman, supra,* 156 F.3d at p. 836.) We recognize that Mojica had no records to back up his claim that his costs of doing business negated any profits he made. However, if Mojica had known ahead of time about the tax deficiency requirement and its concomitant defense, he might well have put on a stronger case concerning proof of his claimed deductions and expenses.[13] On this record, we cannot say beyond a reasonable doubt that the error was harmless.[14]

---

[12] *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824] (*Chapman*).

[13] For instance, Mojica might have tried to show his business expenses by obtaining records of inventory purchases from his store's suppliers.

[14] We also recognize that isolated portions of the record could be construed to mean that Mojica's trial lawyer in fact knew ahead of time that the prosecution had to prove the existence of a tax deficiency: defense counsel unsuccessfully requested a jury instruction that began with such a statement; he argued that point to the jury; and he made a new trial motion on that ground. However, the rest of the requested instruction and its supporting authorities dealt solely with the proper method of proving the existence of taxable income, which was also the focus of defense counsel's argument to the court concerning the need for that instruction. To the extent that instruction reflected knowledge by defense counsel that the tax deficiency element should have been at play during the trial, the court's refusal to give the requested instruction lessened the incentive to offer proof on that issue. Defense counsel's two passing remarks about the need for proof of a tax deficiency were not based on the fact that a tax deficiency was an element of the offense going to the "tax imposed by" language of section 19706, but instead tied the absence of a tax deficiency to the "intent to evade" requirement by showing that Mojica did not intend to evade taxes because there was no proof he owed any. As for the new trial motion, it says nothing about counsel's knowledge during the course of the trial itself. Ultimately, whether or not defense counsel in fact knew ahead of time about the rule we announce in this decision is a matter of speculation, a state of mind that falls far short of *Chapman*'s beyond a reasonable doubt standard.

## DISPOSITION

The judgment is reversed.

Cooper, P. J., and Flier, J., concurred.