Filed 6/2/25  P. v. Munoz CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>HERIBERTO HERNANDEZ MUNOZ,<br><br>    Defendant and Appellant. | G063144<br><br>(Super. Ct. No. 17NF0391)<br><br>O P I N I O N |

            Appeal from a judgment of the Superior Court of Orange County, Kimberly Menninger, Judge. Affirmed.

            Alex Coolman, under appointment by the Court of Appeal, for Defendant and Appellant.

            Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Eric Tran, Deputy Attorneys General, for Plaintiff and Respondent.

*        *        *

A homicide that would otherwise be murder may instead be reduced to voluntary manslaughter if the defendant acted in imperfect (unreasonable) self-defense, or the defendant was provoked by a "sudden quarrel or heat of passion." (Pen. Code, § 192, subd. (a).)[1]

In this case, defendant Heriberto Hernandez Munoz fought with Javier Martinez. After Munoz knocked Martinez to the ground, Munoz hit Martinez in the head with a large rock causing fatal injuries to his skull.

The People charged Munoz with murder. At trial, Munoz testified that he thought Martinez was trying to kill him and he felt provoked. The court instructed the jury on murder and voluntary manslaughter. The jury found Munoz guilty of first degree murder (premeditated and deliberate).

Munoz claims the trial court erred by using the official jury instructions for murder and voluntary manslaughter. Munoz also claims the prosecutor misstated the law on voluntary manslaughter. But Munoz did not raise these claims at trial, so they have been forfeited on appeal. In any event, we find they are without merit. Thus, we affirm the judgment.

I.

FACTS AND PROCEDURAL BACKGROUND

Munoz and Martinez were fighting in an area similar to a flood control channel. At one point, Martinez was lying face up in the shallow water and was motionless. Munoz was on top of Martinez and repeatedly punched him. Munoz grabbed a large, one-and-a-half foot rock, raised it to his head, and threw it at Martinez's head. Munoz then laughed loudly and pointed at Martinez. During the encounter, a witness called the police.

---

[1] Undesignated statutory references are to the Penal Code.

2

*Police Investigation*

When police arrived on the scene an officer saw Munoz standing over Martinez's lifeless body. Martinez had sustained multiple lacerations to his forehead, eye area, nose, and upper lip. There was sand around his nose, mouth, and eyes.

A later autopsy revealed that Martinez had sustained compound fractures to his forehead, a broken jaw, broken cheek bones, a fracture to the cartilage in his neck, and a fracture to his ribs. Martinez's nose was almost completely removed. Brain matter could be seen coming out of Martinez's skull. A coroner opined that based on the severity of Martinez's injuries, they were caused by a heavy object rather than by fists. The coroner opined Martinez died of blunt force trauma to his head.

Munoz told an officer at the scene that Martinez said he had killed Munoz's former girlfriend (there was no evidence of this), and Martinez "wanted to fight with me. He wanted to kill me." Munoz told the officer: "Be careful with him. 'Cuz maybe he's not dead."

Munoz later told a homicide investigator that Martinez was involved with witchcraft, and Martinez had told him that he had drowned Munoz's former girlfriend, whom he had not seen in over a year. Munoz said Martinez had "made a little doll and he tied it up and put in underneath a tree." Munoz told the investigator that Martinez had been insulting him for about three or four months. Munoz said he got angry with Martinez, and they started fighting. Munoz said that after Martinez hit him with a tube, he grabbed Martinez and hit him six or seven times with his fist: "I think I even broke his head." Munoz claimed that Martinez wanted to hit him with a rock, and he was not sure whether he took the rock away from Martinez. Munoz said that he put enough sand on Martinez's face "so he didn't breathe."

*Court Proceedings*

The People filed an information charging Munoz with one count of murder. The court conducted an 11-day jury trial.

During the defense portion of the trial, Munoz testified he had broken up with his girlfriend about a year prior to Martinez's death. Munoz said that he had met Martinez about two or three years prior to his death. Munoz testified that Martinez had made fun of him for several months because Munoz's girlfriend had cheated on him and left him.

Munoz testified that on the day of the killing, Martinez hit him with the tube, and after that they started fighting. Munoz said that Martinez told him that he had killed Munoz's former girlfriend, and he believed it. Munoz testified he felt like Martinez "wanted to kill me." Munoz said Martinez bit him, and during the fight Martinez "was mocking" him. Munoz testified he was angry and was fighting for his life. Munoz said that after punching Martinez, he noticed that he had damaged Martinez's face, and he stopped because he was confused. Munoz testified that Martinez had grabbed a rock, and he held Martinez's hand. Munoz said that he started putting dirt on Martinez because "I was afraid he would get up and hurt me."

A defense expert testified that some people believe that spells can ruin their lives. Another defense expert testified that a person in fight or flight mode may experience a human alarm reaction, and "the presence of a weapon increases the arousal and intensity of this response."

After the conclusion of evidence, the trial court instructed the jury on murder and voluntary manslaughter (heat of passion and imperfect self-defense). The jury found Munoz guilty of murder in the first degree (premeditation and deliberation). The trial court imposed a sentence of 25 years to life in state prison.

## II.

## DISCUSSION

Munoz claims: A) the trial court committed instructional error; and B) the prosecutor committed error during closing arguments.

### A. Instructional Error Claims

Munoz argues that the trial court committed instructional error by using the official jury instructions for murder (CALCRIM No. 520) and voluntary manslaughter (CALCRIM Nos. 570, 571). We disagree.

Instructional error claims are analyzed under an independent (de novo) standard of review. (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

In this part of the discussion, we will: 1) review relevant legal principles regarding instructional errors; 2) summarize the trial court proceedings; and 3) analyze the facts as applied to the law.

#### 1. Legal Principles

"Failure to object to instructional error forfeits the issue on appeal unless the error affects defendant's substantial rights." (*People v. Anderson* (2007) 152 Cal.App.4th 919, 927; *People v. Andersen* (1994) 26 Cal.App.4th 1241, 1249 ["Ascertaining whether claimed instructional error affected the substantial rights of the defendant necessarily requires an examination of the merits of the claim"].)

An appellate court determines whether the trial court fully and fairly instructed the jury on the applicable law. (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.) When making this determination, we consider the instructions taken as a whole, and we presume jurors are intelligent people capable of understanding and correlating all of the instructions they were

given. (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1220, overruled on other grounds by *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.)

"'Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.'" (*People v. Ramos, supra*, 163 Cal.App.4th at p. 1088.) The ultimate question is whether there is a reasonable likelihood the jury applied the instructions that were objected to in an impermissible manner. (*People v. Hajek and Vo, supra*, 58 Cal.4th at p. 1220.)

It is well established that "the Bench Notes and the CALCRIM jury instructions are not themselves legal authority." (*People v. Johnson* (2016) 243 Cal.App.4th 1247, 1269; see also *People v. Mojica* (2006) 139 Cal.App.4th 1197, 1204, fn. 4 ["pattern jury instructions are prepared by distinguished legal scholars and provide a valuable service to the courts, [but] they are not the law and are not binding"].) However, the Judicial Council's pattern jury instructions are "the official instructions for use in the state of California." (Cal. Rules of Court, rule 2.1050(a).)

"Murder is the unlawful killing of a human being, or a fetus, with malice aforethought." (§ 187, subd. (a).) The required "malice may be express or implied." (§ 188, subd. (a).)

"Manslaughter is the unlawful killing of a human being without malice." (§ 192.) "A defendant commits voluntary manslaughter when a homicide that is committed either with intent to kill [express malice] or with conscious disregard for life [implied malice]—and therefore would normally constitute murder—is nevertheless reduced or mitigated to manslaughter." (*People v. Bryant* (2013) 56 Cal.4th 959, 968; § 189.)

The voluntary manslaughter statute refers to a killing "upon a sudden quarrel or heat of passion." (§ 192, subd. (a).) Additionally, according

6

to "the doctrine of imperfect self-defense, when the trier of fact finds that a defendant killed another person because the defendant *actually* but unreasonably, believed he was in imminent danger of death or great bodily injury, the defendant is deemed to have acted without malice and thus can be convicted of no crime greater than voluntary manslaughter." (*In re Christian S.* (1994) 7 Cal.4th 768, 771.)

A trial court has a sua sponte duty to instruct on voluntary manslaughter as a lesser included offense of murder where there is evidence from which a reasonable jury could conclude that sufficient provocation was present. (*People v. Thomas* (2013) 218 Cal.App.4th 630, 643.) When a defendant puts provocation at issue by making a sufficient showing to raise a reasonable doubt, the prosecution must "prove malice beyond a reasonable doubt by proving that sufficient provocation was lacking." (*Ibid.*)

*2. Court Proceedings*

In this case, the trial court used CALCRIM No. 570, the official instruction for the crime of murder. In part, the instruction stated:

"The defendant is charged with murder in violation of Penal Code section 187. To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant committed an act that caused the death of another person; [¶] 2. When the defendant acted, he had a state of mind called malice aforethought; AND [¶] 3. He killed without lawful justification.

"There are two kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish the state of mind required for murder." (CALCRIM No. 520.)

The court also used CALCRIM No. 570, the official instruction for the crime of voluntary manslaughter (heat of passion). In part, the

7

instruction stated:

"Heat of passion does not require anger, rage, or any specific emotion. It can be any violent or intense emotion that causes a person to act without due deliberation and reflection.

"In order for heat of passion to reduce murder to voluntary manslaughter, the defendant must have acted under the direct and immediate influence of the provocation as I have defined it. While no specific type of provocation is required, slight or remote provocation is not sufficient. Sufficient provocation may occur over a short or a long period of time.

"It is not enough that the defendant was simply provoked. The defendant is not allowed to set up his own standard of conduct. In deciding whether the provocation was sufficient, consider whether a person of average disposition, in the same situation and knowing the same facts, would have reacted from passion rather than from judgment.

"If enough time passed between the provocation and the killing for an ordinary person of average disposition to 'cool off' and regain his or her clear reasoning and judgment, then the killing is not reduced to voluntary manslaughter on this basis.

"The People have the burden of proving beyond a reasonable doubt that the defendant did not kill as a result of a sudden quarrel or in the heat of passion. If the People have not met this burden, you must find the defendant not guilty of murder." (CALCRIM No. 570.)

The court also used CALCRIM No. 571, the official instruction for the crime of voluntary manslaughter (imperfect self-defense). In part, the instruction stated:

"The defendant acted in imperfect self-defense if: [¶] 1. The defendant actually believed that he was in imminent danger of being killed or

8

suffering great bodily injury; AND [¶] 2. The defendant actually believed that the immediate use of deadly force was necessary to defend against the danger; BUT [¶] 3. At least one of those beliefs was unreasonable.

"Belief in future harm is not sufficient, no matter how great or how likely the harm is believed to be. In evaluating the defendant's beliefs, consider all these circumstances as they were known and appeared to the defendant. [¶] A danger is *imminent* if, when the fatal wound occurred, the danger actually existed or the defendant believed it existed. The danger must seem immediate and present, so that it must be instantly dealt with. It may not be merely prospective or in the near future.

"If you find that [Martinez] threatened or harmed the defendant or others in the past, you may consider that information in evaluating the defendant's beliefs. [¶] If you find that the defendant knew that [Martinez] had threatened or harmed others in the past, you may consider that information in evaluating the defendant's beliefs. [¶] . . . [¶]

"The People have the burden of proving beyond a reasonable doubt that the defendant was not acting in imperfect self-defense. If the People have not met this burden, you must find the defendant not guilty of murder." (CALCRIM No. 571.)

### 3. Application and Analysis

The California Supreme Court has generally held that CALCRIM No. 520 and its predecessor CALJIC No. 8.11 correctly state the law as to the crime of murder. (See, e.g., *People v. Collins* (2025) 17 Cal.5th 293, 306, fn. 3; *People v. Chiu* (2014) 59 Cal.4th 155, 160, superseded by statute on other grounds, as noted in *People v. Gentile* (2020) 10 Cal.5th 830, 848–849; *People v. Mil* (2012) 53 Cal.4th 400, 413; *People v. Howard* (2008) 42 Cal.4th 1000,

9

1025; *People v. Knoller* (2007) 41 Cal.4th 139, 152.)

The California Supreme Court has also generally held that CALCRIM Nos. 570 and 571 correctly state the law as to the crime of voluntary manslaughter (heat of passion and imperfect self-defense). (See e.g., *People v. Schuller* (2023) 15 Cal.5th 237, 254 (*Schuller*); *People v. Elmore* (2014) 59 Cal.4th 121, 131–132; *People v. Beltran* (2013) 56 Cal.4th 935, 954, fn. 14; *People v. Gonzalez* (2012) 54 Cal.4th 643, 660, superseded by statute on other grounds, as noted in *People v. Wilson* (2023) 14 Cal.5th 839, 868; *People v. Moore* (2011) 51 Cal.4th 386, 412, fn. 8.)

In consideration of binding precedent, we hold that the trial court did not commit instructional error by utilizing the official jury instructions for murder (CALCRIM No. 520), and voluntary manslaughter (CALCRIM Nos. 570, 571). (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [courts exercising inferior jurisdiction must accept the law as declared by courts exercising superior jurisdiction].)

Munoz argues CALCRIM No. 520, the pattern jury instruction on the crime of murder, is "defective when used in cases involving evidence of manslaughter because it both lacks any reference to the manslaughter-related considerations that are 'necessary" to the determination of malice and contains no indication that the jury should consult any other instruction before returning a 'murder' conviction." We disagree.

Munoz provides no legal authority for the proposition that a trial court must instruct the jurors on the elements of two crimes (murder and manslaughter) within the same jury instruction. Indeed, we think this type of approach to instructing a jury would be entirely unworkable.

In this case, the trial court further instructed the jury: "Pay careful attention to all of these instructions and *consider them together*."

10

(CALCRIM No. 200, italics added.) The court then separately instructed the jury on the elements of murder (CALCRIM No. 520), and the elements of voluntary manslaughter (CALCRIM Nos. 570, 571.)

We presume the jurors followed the court's instructions and considered both the murder and voluntary manslaughter instructions together; Munoz has not provided us with a reason to overcome that presumption. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852 [" Jurors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions"].)

Munoz also argues that the California Supreme Court's opinion in *Schuller*, *supra*, 15 Cal.5th 237, compels a different result. We disagree.

In *Schuller*, the Supreme Court summarized California's murder and manslaughter laws. (*Schuller*, *supra*, 15 Cal.5th at pp. 252–257.) As relevant here, the Court said as to voluntary manslaughter that "California law recognizes two circumstances where 'a finding of malice may be precluded, and the offense limited to manslaughter, even when an unlawful homicide was committed with intent to kill' [citation]: (1) when a person kills ""in a "sudden quarrel or heat of passion" [citation], or . . . [(2) when a person] kills in "unreasonable self-defense" — the unreasonable but good faith belief in having to act in self-defense [citations]."" [Citation.] 'These mitigating circumstances *reduce* an intentional, unlawful killing from murder to voluntary manslaughter "by negating the element of malice that otherwise inheres in such a homicide.""" (*Id.* at p. 252, italics added.)

In *Schuller,* the Court explained that "given how California has chosen to structure its homicide laws, when imperfect self-defense [or sudden quarrel/heat of passion] is at issue in a murder case, the People must prove the absence of that circumstance 'beyond a reasonable doubt . . . in order to

11

establish the . . . element of malice.'" (*Schuller*, *supra*, 15 Cal.5th at pp. 253, 257 ["it is well established that when imperfect self-defense is at issue, the prosecution cannot establish malice without proving the absence of that circumstance beyond a reasonable doubt"].) The Court noted: "California's standard jury instructions on voluntary manslaughter include this requirement. (CALCRIM Nos. 570 [sudden quarrel/heat of passion], 571 [imperfect self-defense].)" (*Id.* at p. 254.)

Munoz argues CALCRIM Nos. 570 (heat of passion) and 571 (imperfect self-defense) are at odds with the Court's holding in *Schuller,* because they begin "with the presumption that a killing is 'otherwise murder' and telling the jury how it may '*reduce*' that murder to 'voluntary manslaughter' by finding the killing to have occurred in the heat of passion or imperfect self-defense." (Italics added.) We disagree.

In fact, the pattern instructions on voluntary manslaughter essentially follow the same "reduce" language as used by the Supreme Court in *Schuller*. (See *Schuller*, *supra*, 15 Cal.5th at p. 252 ["'These mitigating circumstances *reduce* an intentional, unlawful killing from murder to voluntary manslaughter'"], italics added.) And the *Schuller* court explicitly approved of the language used in CALCRIM No. 570 (heat of passion) and CALCRIM No. 571 (imperfect self-defense). (See *Schuller*, *supra*, 15 Cal.5th at p. 254 ["California's standard jury instructions on voluntary manslaughter include this requirement"].)

To reiterate, we find Munoz's claims of instructional error have been forfeited on appeal, and in any event, they are not supported by the record on appeal and/or any cited case law.

*B. Prosecutorial Misconduct Claims*

Munoz claims the prosecutor erred by misstating the law on voluntary manslaughter during closing arguments. We disagree.

Generally, "an appellate court reviews a trial court's ruling on prosecutorial misconduct for abuse of discretion." (*People v. Alvarez* (1996) 14 Cal.4th 155, 213.) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712, fns. omitted.)

In this part of the discussion, we will: 1) review relevant legal principles regarding prosecutorial error; 2) summarize the trial court proceedings; and 3) analyze the law as applied to the facts.

*1. Relevant Legal Principles*

"A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury." (*People v. Morales* (2001) 25 Cal.4th 34, 44.)

Ordinarily, in order to raise an alleged error on appeal, the issue must first be raised in the trial court. (In re *S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2.) Specifically, a defendant forfeits a prosecutorial misconduct claim on appeal unless the defendant objected to the alleged misconduct

13

when it occurred at trial, and further asked the court to admonish the jury. (See *People v. Ervine* (2009) 47 Cal.4th 745, 806.)

"'A prosecutor is held to a standard higher than that imposed on other attorneys because of the unique function he or she performs in representing the interests, and in exercising the sovereign power, of the state.'" (*People v. Hill* (1998) 17 Cal.4th 800, 819-820.) However, "'the term prosecutorial "misconduct" is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind. A more apt description of the transgression is prosecutorial error.'" (*People v. Centeno* (2014) 60 Cal.4th 659, 666–667.)

In reviewing a prosecutor's comments to the jury, "we must view the statements in the context of the argument as a whole." (*People v. Cole* (2004) 33 Cal.4th 1158, 1203.) Generally, a prosecutor has "'wide latitude to discuss and draw inferences from the evidence at trial,' and whether 'the inferences the prosecutor draws are reasonable is for the jury to decide.'" (*Ibid.*) The relevant question is "'whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.'" (*Id.* at pp. 1202–1203.)

A homicide may be reduced to voluntary manslaughter "if *the killer's reason* was actually obscured as the result of a strong passion aroused by a 'provocation' sufficient to cause an "'*ordinary* [*person*] of average disposition . . . to act rashly or without due deliberation and reflection, and from this passion rather than from judgment.'"" (*People v. Breverman* (1998) 19 Cal.4th 142, 163, italics added, disapproved on other grounds in *Schuller, supra,* 15 Cal.5th at p. 260, fn. 7.)

Therefore, voluntary manslaughter (heat of passion) has both subjective and objective elements: *the defendant* actually killed in the heat of

14

passion (the subjective element); and the circumstances giving rise to the heat of passion—the provocation—would arouse passion in the mind of an *ordinarily reasonable person* in similar circumstances (the objective element). (*People v. Steele* (2002) 27 Cal.4th 1230, 1253.) In other words, under the objective element, the "defendant is not permitted to set up his own standard of conduct." (*Id.* at p. 1254.)

### 2. Trial Court Proceedings

Prior to closing arguments, the trial court verbally instructed the jury using standard CALCRIM instructions, in relevant part, as follows: "You must follow the law as I explain it to you even if you disagree with it. If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions." (CALCRIM No. 200.)

During closing arguments, the prosecutor discussed both the heat of passion and imperfect self-defense aspects of voluntary manslaughter.

As far as heat of passion is concerned, the prosecutor said during the lengthy closing argument, in relevant part:

"Heat of passion. You have to show the defendant was provoked. As a result, he acted rashly and under the influence of intense emotion.

"You say well, okay, Mr. [Prosecutor]. You know, even if he was provoked by these beliefs in sin, I'm with you so far. Maybe he deserves a manslaughter. There's a problem. The provocation would have caused a person of average disposition to act rashly, without due deliberation, the person of average disposition.

"And so what is this about? What is this instruction about? What kind of cases can you imagine? This is an awful scenario, but I think it invokes a situation where you can understand. A parent walks in and sees a

15

coach putting on his pants, sees a kid with his pants not on. The kid is crying, and the parent just gets that rage, and the law says look, you can't do what you did, you can't kill like that, but we understand. We could see how a person of average disposition under those circumstances could do that."

"It's not enough that the defendant was simply provoked, okay? He can't set up his own standard of conduct. It's an objective standard.

"Slight or remote provocation isn't sufficient. There's enough time if he cools off. There's no reason for you to believe the defendant anyway. His statements are all self-serving. He tries to sit and switch the subject immediately in the [police] interview. It's not until the end of the interview that he actually starts talking about the actual incident, itself. But even if you do believe him, is this how a person of average disposition would have reacted from passion rather than judgment? Absolutely not. This is an inappropriate defense in this case."

"A person of average disposition would not be enraged about a killing that [Martinez], a person [who] claimed they killed somebody that the defendant had broken up with a year before, who said well . . . I don't care about her. You don't care about somebody, and some random homeless guy says, oh, yeah. I killed that person that day. Ahhh. It's not going to happen. Not a person of average disposition. He can't set his own standards."

"An average disposition. So heat of passion in this case would require you to believe that a person of average disposition would believe and do all of the crazy things that the defendant claims that he did or thought. That's off the table. I'm not going to spend any more time on it. . . . [b]ecause it's an objective standard. It should be rejected, heat of passion."

And as far imperfect self-defense is concerned, the prosecutor said in relevant part:

16

"The defendant acted in imperfect self-defense if he actually believed he was in imminent danger. He must actually have that subjective belief in his own head that he's about to be killed. He believed that deadly force was necessary at that time. [¶] But it's unreasonable. So this is what separates it. Imperfect self-defense. We're saying, look, maybe you were wrong about something. It was an unreasonable choice, but you're still guilty of something; voluntary manslaughter. And in some case[s], this is appropriate. Not in this case, and I'll show you why.

"Future harm is not sufficient no matter how great the, likely the harm is to be. The fact that [Martinez] has these Voodoo powers, if you actually believe the defendant believed that, which is a stretch of the imagination to begin with, but even if you really believe that, it's in the future. [¶] He didn't believe he was in imminent danger though. That's the problem here."

### 3. Application and Analysis

Munoz claims that the prosecutor committed misconduct by misstating the law on voluntary manslaughter. But Munoz did not object on these grounds at any time during the trial, and he did not request the court to admonish the jury, so these claims have been forfeited on appeal. (See *People v. Santana* (1982) 134 Cal.App.3d 773, 785 [a "'contrary rule would deprive the People of the opportunity to cure the defect at trial and would "permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal"'"].)

In any event, we find Munoz's claims to be unsupported by the record. Based on our review, it appears that the prosecutor discussed the elements of voluntary manslaughter during his closing arguments in a

17

manner that the prosecutor presumably thought would be persuasive to the jurors. In reviewing the entire transcript (about 62 pages), we find that the prosecutor's explanations of the legal concepts regarding voluntary manslaughter were largely reiterations and restatements of the court's pattern jury instructions. (See CALCRIM Nos. 570, 571.)

For instance, at one point during closing argument the prosecutor said: "It's not enough that the defendant was simply provoked, okay? He can't set up his own standard of conduct. It's an objective standard." This tracks closely with the pattern jury instruction, which stated: "It is not enough that the defendant was simply provoked the defendant is not allowed to set up his own standard of conduct. In deciding whether the provocation was sufficient, consider whether a person of average disposition in the same situation and knowing the same facts, would have reacted from passion rather than from judgment." (CALCRIM No. 570.)

Moreover, even were we to find that the prosecutor misstated the law in some minor respects, we would then also presume the jury followed the court's specific instruction to "follow the law as I explain it to you, even if you disagree with it. If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions." (CALCRIM No. 200; *People v. Chhoun* (2021) 11 Cal.5th 1, 30 [appellate courts presume the jurors followed the trial court's instructions].)

In sum, we find that Munoz's claims of prosecutorial error have been forfeited on appeal, and in any event, they are not meritorious.

Martinez argues that the prosecutor "explicitly asserted that the 'objective' standard for heat-of-passion manslaughter could only be satisfied if the average person would 'kill like that,' 'behave exactly as he would' and 'do all the crazy things that the defendant claims that he did.'"

18

We disagree. When taken in context, the prosecutor appeared to be arguing that *the evidence* regarding Munoz's alleged provocation did not support either the subjective and/or the objective elements of voluntary manslaughter under either a heat of passion or imperfect self-defense theory. The jurors were free, of course, to make up their own minds. Once again, the prosecutor did not appear to misstate the law regarding voluntary manslaughter during closing arguments and there were no objections. (See *People v. Cole, supra,* 33 Cal.4th at pp. 1202–1203 [the relevant question is "'whether there is a reasonable likelihood that the jury construed or applied any of the complained-of-remarks in an objectionable fashion'"]; *People v. Morales, supra,* 25 Cal.4th at p. 44 ["Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury"].)

Munoz argues that *People v. Najera* (2006) 138 Cal.App.4th 212 (*Najera*), compels a different result. We disagree.

In *Najera,* "the prosecutor described voluntary manslaughter as a 'legal fiction.'" (*Najera, supra,* 138 Cal.App.4th at p. 220.) The prosecutor also informed the jury that a determination of heat of passion should be based on the defendant's conduct in response to the provocation rather than whether the provocation itself was such that it would cause an ordinary person of average disposition to act rashly. (*Id.* at p. 223.) The Court of Appeal explained that in a voluntary manslaughter (heat of passion) defense: "The focus is on the provocation—the surrounding circumstances—and whether it was sufficient to cause a reasonable person to act rashly. How the killer responded to the provocation and the reasonableness of the response is not relevant to sudden quarrel or heat of passion." (*Id.* at p. 223.)

19

Unlike *Najera*, the prosecutor in this case did not describe the crime of voluntary manslaughter as a legal fiction. Rather, the prosecutor appeared to argue that Munoz's testimony regarding the purported provocation by Martinez (e.g., "Voodoo powers") was not to be believed (the subjective element) *and* it was unreasonable (the objective element). That is, the prosecutor appeared to be arguing that Munoz's testimony did not meet either the subjective and/or objective elements for reasonable provocation (whereas the hypothetical scenario about catching a child molester in the act of molesting a child *would* arguably provide reasonable provocation). Thus, we find that Munoz's comparison with *Najera* is not persuasive.

It is true that similar to *Najera*, there were some point during the prosecutor's closing argument that he appeared to focus more on Munoz's response to the provocation rather than the reasonableness of the provocation itself. (See *Najera, supra*, 138 Cal.App.4th at p. 223.) However, we note that the jury's guilty verdict in *Najera* was ultimately affirmed on appeal because the appellate court determined that the trial court had, in fact, correctly instructed the jury on the relevant legal concepts regarding voluntary manslaughter. (*Najera, supra,* 138 Cal.App.4th at p. 224.) ["The trial court correctly instructed the jury to follow the court's instructions, not the attorneys' description of the law, to the extent there was a conflict. We presume the jury followed that instruction"].)

Here, similar to *Najera*, and as we found in the earlier portion of this discussion, the trial court also correctly instructed Munoz's jury on the relevant legal concepts regarding voluntary manslaughter.

To reiterate and conclude, we find Munoz's allegations of instructional error and prosecutorial misconduct have been forfeited on

20

appeal, and in any event, they are not supported by the record.[2]

## III.

## DISPOSITION

The judgment is affirmed.


                                        MOORE, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


DELANEY, J.

---

[2] In the alternative, Munoz also claims ineffective assistance of counsel (IAC) because trial counsel failed to object both to the challenged jury instructions and to the prosecutor's closing arguments. However, because we find that the substantive claims of instructional error and prosecutorial misconduct fail on their merits, we need not address Munoz's alternative IAC claims. (See *Strickland v. Washington* (1984) 466 U.S. 668, 697.)