Filed 5/29/26  P. v. Wright CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B336101 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA133084) |
| v. | |
| DERRICK DESHAE WRIGHT, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David C. Brougham, Judge.  Vacated in part, affirmed in part, and remanded with directions.

Correen Ferrentino, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez, Michael C. Keller and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

Defendant Derrick Deshae Wright was convicted at a court trial on two counts of failure to update annually his sex offender registration within five working days of his birthday (i.e., July 21) in 2021 and 2022, in violation of Penal Code[1] section 290.012. Wright's obligation to register as a sex offender for life arises from his 1991 conviction for sodomy by force, in violation of section 286, subdivision (c).

On appeal, Wright raises the following claims: (1) The trial court erred in admitting an inculpatory post-arrest statement Wright had made because the record does not disclose the contents of the *Miranda*[2] advisements the interviewing detective gave, but just that the detective read off a "card"; (2) there is insufficient evidence to support Wright's convictions because (a) the record does not show he resided in Los Angeles County or California in July 2021 and July 2022, and (b) the record lacks substantial evidence supporting the essential elements of actual knowledge of the duty to register and willful failure to do so, primarily because Wright and his wife claimed law enforcement personnel told Wright he no longer had to register as a sex offender; and (3) the court erred in imposing two $30 criminal conviction assessment fees and two $40 court operations assessment fees without first determining whether he had the ability to pay those fees.

We reject Wright's first two claims of error, vacate the $60 in criminal conviction assessment fees and $80 in court operations assessment fees, remand to the trial court to consider

---

[1] Undesignated statutory references are to the Penal Code.

[2] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

2

Wright's ability to pay these ancillary costs, and affirm the remainder of the judgment.

First, Wright forfeited his challenge to the adequacy of the *Miranda* advisements by failing to raise that claim below. Instead, Wright's trial counsel suggested her *Miranda* objection rested solely on her claim that Wright did not knowingly, voluntarily, and intelligently waive his *Miranda* rights before he made the inculpatory statement. Second, Wright's sufficiency-of-the-evidence claim fails because (a) the People did not have to prove Wright was a Los Angeles County resident in July 2021 and July 2022, (b) the record contains evidence from which the trial court reasonably could have inferred Wright remained a California resident during that timeframe, and (c) the trial court could reasonably have inferred that Wright was aware of his duty to register but declined to do so. Lastly, to forestall a claim of ineffective assistance of counsel, we excuse Wright's forfeiture of his challenge to the ancillary costs, and direct the court on remand to consider Wright's ability to pay those costs.

## PROCEDURAL BACKGROUND[3]

We summarize only those facts pertinent to our disposition of this appeal. We describe in greater detail certain trial evidence and aspects of the procedural history in our Discussion, *post*.

The People filed an information charging Wright with one count of failing to update annually his sex offender registration

---

[3] In reciting the relevant facts, we rely in part on admissions from the parties' briefing. (See *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 772, fn. 2 [employing this approach].)

within five working days of his birthday in July 2021, and one count of failing to update annually his sex offender registration within five working days of his birthday in July 2022, both of which are violations of section 290.012, subdivision (a). Wright's obligation to register as a sex offender for life stems from a 1991 conviction for sodomy by force, in violation of section 286, subdivision (c), for which he started registering in 1992.

Following a court trial, the trial court found Wright guilty on both counts. At the February 9, 2024 sentencing hearing, the court struck a prior strike allegation, imposed the midterm sentence of two years in prison on one of the two counts and a concurrent prison term of two years on the other count, and awarded Wright 520 days of custody credit. The court also imposed certain monetary obligations, including a restitution fine of $300, two court operations assessment fees totaling $80, and two criminal conviction assessment fees totaling $60.

On December 8, 2023, Wright filed a premature appeal from the judgment. On June 3, 2024, the administrative presiding justice deemed Wright's premature notice of appeal to have been filed after rendition of the judgment.

## LEGAL BACKGROUND

Section 290, subdivision (b) provides in relevant part, "Every person described in subdivision (c), . . . while residing in California . . . shall register with the chief of police of the city in which the person is residing, or the sheriff of the county if the person is residing in an unincorporated area or city that has no police department . . . within five working days of coming into, or changing the person's residence within, any city, county, or city and county . . . and shall register thereafter in accordance with the Act, unless the duty to register is terminated . . . as provided

4

by law." (See § 290, subd. (b); see also *id.*, subd. (a) ["All references to 'the Act' in [sections 290 to 290.024, inclusive,] are to the Sex Offender Registration Act."].) As a general rule, subdivision (c) requires an individual who is convicted of a violation of section 286 to register. (See § 290, subd. (c)(1) [identifying a violation of § 286 as an offense for which a person must register]; § 290, subd. (c)(3) [excluding certain persons who violated § 286, subd. (b)].)[4]

Section 290.012, subdivision (a) in turn provides in pertinent part, "Beginning on his or her first birthday following registration or change of address, the person shall be required to register annually, within five working days of his or her birthday, to update his or her registration with the entities described in subdivision (b) of Section 290." (§ 290.012, subd. (a).) "The registering agency shall submit registrations, including annual updates or changes of address, directly into the Department of Justice California Sex and Arson Registry (CSAR)." (*Id.*, subd. (d).)

Additionally, as relevant here, section 290.018, subdivision (b) states: "[A] person who is required to register under the act based on a felony conviction . . . who willfully violates any requirement of the act . . . is guilty of a felony and shall be punished by imprisonment in the state prison for 16 months, or two or three years." (§ 290.018, subd. (b).) "A person who is required to register under the act who willfully violates any requirement of the act is guilty of a continuing offense as to each requirement he or she violated." (*Id.*, subd. (j).)

---

[4] As we noted in our Procedural Background, *ante*, Wright was convicted of sodomy by force in violation of section 286, subdivision (c) in 1991.

# DISCUSSION

## A. Wright Forfeited His Claim that the *Miranda* Advisements Were Inadequate

Under *Miranda* and its progeny, " ' "[an] accused [who is the subject of custodial interrogation] must be adequately and effectively apprised of his rights" to remain silent and to have the assistance of counsel. [Citation.] . . . ' [Citation.]" (See *People v. Nelson* (2012) 53 Cal.4th 367, 374.) "[A] suspect in custody must be advised as follows: 'He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.' [Citation.]" (*People v. Singh* (2024) 103 Cal.App.5th 76, 96 (*Singh*), quoting *Miranda*, *supra*, 384 U.S. at p. 479.) "[A] defendant's statement is inadmissible unless all four warnings were given to the defendant prior to the interrogation, regardless of the defendant's understanding of his or her rights." (*People v. Bradford* (2008) 169 Cal.App.4th 843, 852.)

" '*Miranda* makes clear that in order for [the] defendant's statements to be admissible against him, he must have knowingly and intelligently waived his rights to remain silent, and to the presence and assistance of counsel. [Citation.] [¶] . . . We have recognized that a valid waiver of *Miranda* rights may be express or implied.' [Citation.] [¶] '[U]ltimately the question becomes whether the *Miranda* waiver was knowing and intelligent under the totality of the circumstances surrounding the interrogation.' [Citation.]" (*Singh*, *supra*, 103 Cal.App.5th at p. 99.)

6

Wright argues, "The trial court's admission of [his] post-arrest statement" to Detective Jeremy Cook that Wright believed "he was no longer required to register [as a sex offender] due to things he had read and conversations with the FBI" "constitute[s] reversible error." Specifically, he argues, "The prosecution failed to establish by a preponderance of the evidence that Wright was properly advised of his *Miranda* rights prior to custodial interrogation, and therefore, his subsequent statement was inadmissible." (Italics added.) According to Wright, Detective Cook "merely testified he 'read a *Miranda* card' to Wright," and, "[w]ithout the officer reciting the warnings in court or the card being entered into evidence, there is simply no basis for the trial court to conclude that the . . . required advisements were given." As explained below, Wright failed to preserve his objection to the adequacy of the *Miranda* warnings. Rather, defense counsel objected to the admission of Wright's statements on the ground the circumstances of his interrogation demonstrated he did not waive his *Miranda* rights knowingly, intelligently, and voluntarily.

Detective Cook testified on direct examination that after he arrested Wright on an outstanding warrant issued in Kern County for kidnapping, the detective took Wright to the hospital because Wright had complained of chest pains. Detective Cook testified that later that day, he took Wright to the police station and interviewed Wright. Detective Cook further testified he read Wright his *Miranda* rights from a "card," and the detective answered in the affirmative when the prosecutor asked him whether Wright appeared to understand his rights. At that point, defense counsel asked for permission to "voir dire [the

7

witness] regarding the *Miranda* advisement," and the trial court granted that request.

During defense counsel's voir dire of the witness, Detective Cook once again confirmed he read Wright his *Miranda* rights "straight off [a] *Miranda* card . . . ." Detective Cook testified the interview was recorded on video and that he did not have Wright sign a *Miranda* waiver. The remainder of defense counsel's questioning during voir dire concerned whether Wright validly waived his *Miranda* rights, e.g., counsel asked about the location of the interview, Wright's demeanor, and whether Wright had been evaluated for any mental health issues or been provided any medication at the hospital prior to the interview. After concluding the voir dire, defense counsel stated, "Your Honor, I would ask the court to suppress. The *Miranda* is involuntary." The trial court overruled the objection.

After the direct examination of Detective Cook resumed, the prosecutor asked, "[D]id [Wright] agree to waive his rights and speak to you?" After Detective Cook responded, "I can't say that he ever made an expressed waiver, no," defense counsel declared, "Your Honor, I would object to any further questioning regarding remarks made by my client as not knowing, intelligent, and voluntary specific waivers." In response to the trial court's questioning, Detective Cook testified that although he did not recall Wright's "verbatim response" to the detective's query regarding whether Wright understood the rights read to him, Wright understood those rights and "proceeded to talk to [Detective Cook]." The court then overruled defense counsel's objection, finding that Wright had made "an implied waiver" of his *Miranda* rights. Subsequently, Detective Cook testified that Wright said he was aware that he was required to register as a

sex offender. The detective further testified Wright told the detective (a) Wright had read certain "things . . . that told him he no longer had to register" and (b) the FBI had told him that as well.

On appeal, Wright asserts he preserved his objection to the adequacy of the *Miranda* advisements. Although Wright acknowledges his trial attorney "objected on the grounds that his statement[s to Detective Cook were] not knowing, intelligent, or voluntary," Wright maintains that "this objection implicitly encompassed the foundational requirement of a proper advisement" because "[a]n invalid advisement necessarily renders any subsequent waiver invalid."[5]

Wright misapprehends the test for forfeiture of an appellate claim. The question is not whether the objection raised below (i.e., the validity of the *Miranda* waiver) is, as a theoretical matter, logically related to the claim of error raised on appeal (i.e., the adequacy of the *Miranda* warnings). Rather, we determine whether the " ' " 'defendant . . . br[ought the] error[ ] to the attention of the trial court[ ] so that [it could] be corrected or avoided and a fair trial had . . . .' " [Citation.] . . . .' [Citation.]" (See *People v. Polk* (2010) 190 Cal.App.4th 1183, 1193–1194 (*Polk*).) The focus of the inquiry is on whether " ' " 'it is *unfair to the trial judge and to the adverse party* to take advantage of an error on appeal [because] it could easily have been corrected at the trial.' " [Citation.]' . . . [Citation.]" (See *id.* at p. 1194.) "Accordingly, unless a defendant asserts in the trial court a specific ground for suppression of his or her statements to police

---

[5] Wright does not argue that insofar as his trial counsel failed to preserve this issue for appeal, the attorney rendered constitutionally ineffective assistance to him.

under *Miranda*, that ground is forfeited on appeal, even if the defendant asserted other arguments under the same decision." (*Ibid.*)

Wright's trial counsel did not apprise the trial court and the prosecution of his belief the *Miranda* warnings were insufficient. The above summary of Detective Cook's testimony indicates defense counsel alerted the court and opposing counsel that Wright believed the circumstances of his custodial interrogation established he did not knowingly, voluntarily, and intelligently waive his *Miranda* rights (e.g., by eliciting from the detective testimony that he did not know whether Wright had been given medication at the hospital). Defense counsel did not probe into the adequacy of the *Miranda* advisements themselves or claim that Detective Cook failed to advise Wright of each right secured by *Miranda*. Had trial counsel raised that claim below, the court and the prosecutor would have been afforded an opportunity to ask Detective Cook if he recalled the contents of the *Miranda* card he read to Wright or determine whether the recording of the interview contained that information.[6] Accordingly, Wright forfeited his contention the prosecution failed to demonstrate Detective Cook properly advised Wright of his *Miranda* rights before conducting the custodial interrogation. (Cf. *Polk, supra,* 190 Cal.App.4th at pp. 1191–1195 [holding that a defendant forfeited "the issue of the substantive adequacy of . . . *Miranda* warnings in the trial court" because, although she "object[ed] on grounds of *Miranda*" below, she merely "contended her statements to police were coerced" and did not "mention . . . the warnings themselves"].)

---

[6] The recording is not in the record before us.

10

**B.** **Wright Fails To Demonstrate His Convictions Were Not Supported by Substantial Evidence**

" '[I]n reviewing the sufficiency of the evidence to support a conviction[ ]" [citation,] [w]e . . . examine " 'the entire record in the light most favorable to the judgment' " to determine whether it discloses substantial evidence — " 'evidence that is reasonable, credible, and of solid value' " — " 'from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " [Citation.]  Our review " ' "presume[s] in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." ' [Citation.]  Even where . . . the evidence of guilt is largely circumstantial, our task is not to resolve credibility issues or evidentiary conflicts, nor is it to inquire whether the evidence might ' " 'be reasonably reconciled with the defendant's innocence.' " ' " [Citation.]  Instead, we ask whether there is " ' "substantial evidence of the existence of each element of the offense charged" ' " such that any rational jury may have convicted defendant.' [Citation.]" (See *People v. Barrett* (2025) 17 Cal.5th 897, 964.)

Under the substantial evidence standard, "we *must* begin with the presumption that the evidence . . . *was* sufficient, and the defendant bears the burden of convincing us otherwise.  To meet that burden, it is not enough for the defendant to simply contend, 'without a statement or analysis of the evidence, . . . that the evidence is insufficient . . . .' [Citation.]  Rather, he must *affirmatively demonstrate* that the evidence is insufficient."  (See *People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573 (*Sanghera*).)

The parties agree that to secure Wright's convictions for failure to update annually his sex offender registration under

11

section 290.012, the prosecution had to prove Wright resided in California in 2021 and 2022, Wright actually knew he was required to register in 2021 and 2022, and he willfully failed to do so. (See also Legal Background, *ante* [discussing relevant statutory provisions, including § 290.012].) Wright argues the prosecution also had to prove he "was a resident of Los Angeles County, California at the relevant time . . . ." Wright contends we should reverse his convictions because the prosecution did not present sufficient evidence that (1) Wright "lived in Los Angeles County or anywhere in California" in July 2021 and July 2022, and (2) Wright actually knew he was required to register at that time but willfully failed to do so. (Boldface & some capitalization omitted.)

Wright's sufficiency of the evidence claim fails. First, based on applicable case authority, we reject Wright's claim the prosecution had an obligation to prove he was a resident of Los Angeles County (as opposed to California) in July 2021 and July 2022. (Discussion, part B.1, *post*.) Second, the record contains circumstantial evidence from which the trial court reasonably could have inferred that Wright was a California resident in July 2021 and July 2022. (Discussion, part B.2, *post*.) Third, Wright's challenge to the sufficiency of the evidence supporting the actual knowledge and willful failure to register elements is not well founded. (Discussion, part B.3, *post*.) Wright's argument regarding the elements of actual knowledge and willfulness rests primarily on claims made by Wright and his wife that law enforcement personnel told him he no longer needed to register, which the trial court was free not to credit. (*Ibid.*) Furthermore, the prosecution presented evidence that Wright decided not to register in July 2021 and July 2022 despite

12

having been notified by law enforcement of his obligation to do so. (*Ibid.*)

> 1.  *The People did not have to prove that Wright was a resident of Los Angeles County*

Wright cites CALCRIM number 1170 for the proposition the prosecution had to prove "[t]hat Wright was a resident of Los Angeles County, California at the relevant time . . . ." The second element provided in that jury instruction reads as follows: "The defendant resided (in *<insert name of city>*, California/in an unincorporated area or a city with no police department in *<insert name of county>* County, California/on the campus or in the facilities of *<insert name of university or college>* in California)." (CALCRIM No. 1170.)

In *People v. Wallace* (2009) 176 Cal.App.4th 1088 (*Wallace*), our colleagues in Division Three of the First District held that the prosecution need only prove that a defendant was a California resident at the time he failed to update annually his sex offender registration. The *Wallace* court explained that the operative statutory language in section 290.012 requires the defendant to " 'update,' " meaning " 'bring up to date[,]' . . . . something already in existence," to wit, " 'his or her registration . . . .' " (See *Wallace*, at p. 1105 [construing former § 290, subd. (a)(1)(D)]; see also *id.* at p. 1105, fn. 8 [noting that former § 290, subd. (a)(1)(D) has been renumbered § 290.012].) The court further explained that the underlying registration being brought up to date is governed by subdivision (b) of section 290, which "includes a California residency requirement." (See *Wallace*, at p. 1105; see also *id.* at pp. 1094 & fn. 3 & 1100–1103 [discussing the California residency requirement imposed by former § 290, subdivision (a)(1)(A), "agree[ing] with the prosecution that it had

13

no burden to prove [the defendant] moved to a location within [a particular county] to establish a violation of former section 290, subdivision (a)(1)(A)," and noting the provision was redesignated § 290, subd. (b)].) In its decision, the *Wallace* court indicated the city or county of a defendant's residence was instead relevant in determining whether the case had been tried in the " 'proper venue . . . .' " (See *id.* at p. 1102.)

Wright does not direct us to any statutory text or case authority supporting his position that being a resident of a particular county is a necessary element of the offense of failing to update annually his sex offender registration. In addition, Wright does not argue he was tried in the wrong venue or claim to have raised any such objection below. Accordingly, we reject his argument the prosecution needed to establish he was a Los Angeles County resident when he failed to update his registration in July 2021 and July 2022. (See *People v. Mojica* (2006) 139 Cal.App.4th 1197, 1204, fn. 4 ["Although pattern jury instructions are prepared by distinguished legal scholars and provide a valuable service to the courts, they are not the law and are not binding."].)

2.    *The trial court could have reasonably inferred from circumstantial evidence that Wright was a California resident in July 2021 and July 2022*

Wright admits that he registered as a sex offender for nearly 30 years, and that "[t]he record indicates that Wright had prior convictions for failing to register in 2010, 2013, and 2015, with his 2015 conviction resulting in incarceration until 2017." He further acknowledges the prosecution presented evidence he last registered as a sex offender on July 23, 2019. Indeed, Wright does not dispute, and thus tacitly agrees with, the Attorney

14

General's assertion the trial "evidence showed that, from 1992 to 2019, [Wright] generally complied with his annual registration requirement as a California resident."[7]  The trial court reasonably could have inferred from this evidence that up until July 23, 2019, Wright had been a longstanding resident of California.

Next, Detective Cook provided testimony indicating that when he detained Wright during a traffic stop on May 26, 2023 in Los Angeles County, Wright gave the detective Wright's "California ID card . . . ."[8]  According to Detective Cook, although Wright stated he did not have a permanent address and "was transient," Wright said he was "staying at [his wife's] house" "in West Covina briefly" "at the time [Detective Cook] arrested him." Furthermore, Wright intimates in his reply brief that he had been "staying in West Covina" shortly before his "2023 arrest . . . ."  A reasonable factfinder could have found based on this evidence that as of Wright's arrest on May 26, 2023, he was a California resident.

Because a rational factfinder could have found Wright was a longstanding California resident as of July 23, 2019 and was a California resident on May 26, 2023, the sufficiency of the evidence inquiry turns on whether the trial court could have reasonably inferred that Wright remained a California resident

---

[7]  (See *Reygoza v. Superior Court* (1991) 230 Cal.App.3d 514, 519 & fn. 4 [criminal case in which the Court of Appeal assumed that an assertion made by the respondent was correct because the "defendant did not dispute [the] respondent's claim in his reply"].)

[8]  Wright's California ID card is not in the record before us.

in July 2021 and July 2022.  Certain facts support that conclusion.

First, Wright does not direct us to any evidence he resided outside of California in July 2021 or July 2022.  Although this omission is not in and of itself dispositive of the residency question, the absence of evidence that Wright ceased to be a California resident at some point after July 23, 2019 is nonetheless consistent with a finding that Wright remained a California resident.  (See *Sanghera*, *supra*, 139 Cal.App.4th at p. 1573 [holding that the appellant bears the burden of showing that the evidence was insufficient to support the verdict].)

Second, the prosecution presented evidence that Wright did not notify law enforcement in California that he had relocated to another jurisdiction between July 23, 2019 and May 26, 2023, even though Wright was under a legal obligation to do so if he had moved to another jurisdiction.  Specifically, section 290.013 required Wright to "inform the law enforcement agency or agencies with which he . . . last registered" "within five working days of the move . . . ."[9]  The trial court admitted into evidence entries from the CSAR (California Sex and Arson Registry) showing that law enforcement had deemed Wright to have "absconded" in December 2020 after having last registered at a residential address in California.  The court also admitted into evidence the sex offender registration form Wright signed on

_____

**9**  (See § 290.013, subd. (a); *ibid.* [indicating the provision applies to "[a] person who was last registered at a residence address pursuant to the Act [and] changes his or her residence address, whether within the jurisdiction in which he or she is currently registered or to a new jurisdiction inside or outside the state"].)

16

July 23, 2019, which informed Wright of his statutory duty to notify law enforcement if he moved out of California.

There was also trial evidence concerning Wright's relationship with his wife, whom he had known for many years, that suggested he remained a California resident from July 23, 2019 to May 26, 2023. Wright's wife testified at trial that the two had known each other since they were children. His wife also offered testimony indicating that Wright and she were in contact at around the time that Wright committed sodomy by force, Wright and his wife were in their twenties at that time, and Wright's wife knew the victim of that offense. Additionally, Wright's wife testified she had helped Wright register as a sex offender "for many years," and she offered testimony indicating that shortly before Wright was arrested in 2023, she and Wright had discussions regarding whether Wright was still legally obligated to register as a sex offender. Furthermore, Wright intimates in his reply brief he may have "visit[ed] his wife" after July 2019, although he claims such "short visits" would not have "trigger[ed] the registration requirement" if he resided in a different jurisdiction at the time. In addition, as we noted above, Wright admitted to Detective Cook that Wright was staying at his wife's house in West Covina prior to his arrest.

Based on the above circumstantial evidence, the trial court reasonably could have inferred that Wright did not cease to be a California resident between July 23, 2019 and May 26, 2023.

Wright insists this matter is analogous to *Wallace*, a case in which the Court of Appeal reversed a conviction for failure to update annually the defendant's sex offender registration. (*Wallace*, *supra*, 176 Cal.App.4th at pp. 1091, 1108.) Wright contends that in both *Wallace* and the instant case, the

17

prosecution "relied on sporadic evidence with significant temporal gaps."

In *Wallace*, the defendant was convicted on three felony counts: (1) failing to notify the appropriate law enforcement agency within five working days of his new address or location, in violation of former section 290, subdivision (f)(1) (which has since been renumbered section 290.013); (2) failing to register within five working days of changing his address or location, in violation of former section 290, subdivision (a)(1)(A) (which has been redesignated section 290, subdivision (b)); and (3) failing to update annually his sex offender registration within five working days of his birthday, in violation of section 290, subdivision (a)(1)(D) (which has been renumbered section 290.012). (See *Wallace*, *supra*, 176 Cal.App.4th at pp. 1091, 1094–1095, 1100, 1105 & fns. 4, 7, & 8.) The defendant in *Wallace*, whose birthday was December 7, stipulated he had been convicted of sex offenses in January 1999 that subjected him to our state's sex offender registration and notification requirements. (See *id.* at p. 1092.) The trial evidence showed the defendant first registered as a sex offender in July 2003 in Contra Costa County, and that the last time he registered was in January 2006, at which time he claimed to still reside in that county. (See *id.* at pp. 1092–1094, 1103.) The trial evidence further showed that as of November 29, 2006, the address the defendant had provided to law enforcement in his January 2006 registration form was vacant. (See *id.* at p. 1094.) Further, a detective testified that he confirmed the address was vacant in April 2007. (See *ibid.*)

On appeal, the reviewing court rejected a challenge to the defendant's conviction on the first count, reasoning there was

18

sufficient evidence he had changed his last registered address without informing the law enforcement agency with which he last registered and that the defendant had received "repeated notice from agency representatives regarding his legal dut[y]" of notification. (See *Wallace*, *supra*, 176 Cal.App.4th at pp. 1095–1099.) On the other hand, the *Wallace* court reversed the defendant's convictions on the other two counts for failure to register and failure to update annually his registration, respectively. (*Id.* at p. 1108.) The Court of Appeal reasoned both offenses required the prosecution to prove the defendant was a California resident during the relevant timeframes, that is, April 2007 for the failure to register count and December 2006 for the failure to update count, and the prosecution failed to satisfy that burden because "there was no evidence presented to the jury regarding [the defendant's] whereabouts after he left his last registered address in Contra Costa County . . . ." (See *id.* at pp. 1102–1103, 1105–1107.) In arriving at this conclusion, the *Wallace* court "decline[d] to shift the burden to [the defendant] to prove beyond a reasonable doubt that he was in fact residing outside California during th[e] time" periods in question. (See *id.* at p. 1103.)

*Wallace* is distinguishable. As noted above, Wright registered as a sex offender in California for nearly 30 years from 1992 to 2019, which is far longer than the two and a half year period for which the defendant in *Wallace* had registered in California. (See *Wallace*, *supra*, 176 Cal.App.4th at pp. 1092–1094.) Further evidence that Wright's ties to California were stronger than that of the defendant in *Wallace* is the fact that Wright's wife, with whom he had a longstanding relationship, lived in California, whereas the *Wallace* opinion does not identify

19

any evidence showing the defendant had any connection to the state aside from his residency from July 2003 to January 2006. (See *ibid.*)  Also, as we explained above, there was evidence that when Detective Cook apprehended Wright in California in May 2023, Wright admitted to living with his wife (albeit temporarily) and had in his possession a California identification card.  In contrast, the *Wallace* decision does not disclose where that defendant was apprehended and there is no indication he remained in the state after he last registered as a sex offender in January 2006.  (See, e.g., *id.* at p. 1103 ["[T]he prosecution acknowledges there was no evidence presented to the jury regarding [the defendant's] whereabouts after he left his last registered address . . . in . . . Contra Costa County."].)  These differences between *Wallace* and the case before us demonstrate the evidence here "was sufficient to permit a reasonable inference that [Wright] remained in California" in July 2021 and July 2022.  (See *ibid.*)

Lastly, Wright apparently argues his testimony that he spoke to the FBI in Mojave in 2016 indicates he might not have been a California resident in 2021 and 2022.  He contends, "[T]he city of Mojave is about 130–140 miles to the Nevada border, about a two to two-and-a-half-hour drive.  There is no evidence that Wright did not live or reside outside of California and drive or use public transport to visit his wife for short visits that did not trigger the registration requirement."[10]  Evidence that Wright encountered the FBI in Mojave in 2016 has no apparent bearing on whether he was a California resident in July 2021 and

---

[10] Wright does not clarify whether he is claiming to have encountered the FBI in Nevada.

July 2022.[11]  Furthermore, the undisputed fact (discussed at the beginning of this part) that Wright registered as a sex offender in California each year (with a few minor exceptions) from 1992 to 2019 undermines Wright's suggestion that he was residing in another jurisdiction when he had this purported encounter with the FBI.

For the foregoing reasons, we hold that substantial evidence supports the trial court's finding that Wright remained a California resident in July 2021 and July 2022.

3.  *Wright fails to establish the trial court's findings of*
    *actual knowledge and willful failure to register*
    *are not supported by substantial evidence*

Wright contends, "[T]he state presented no evidence to rebut Wright's and his wife's testimony that in 2021 and 2022 he did not actually know he still needed to register because two law enforcement officers, an FBI agent and his probation officer, told him he was no longer required to register."  Wright further claims, "[H]is wife, who has some experience with regulations as a social worker conducted her own research believing Wright no

---

[11]  Wright claims on page 18 of his opening brief that at pages 666 to 667 of volume three of the reporter's transcript, he testified that he encountered the FBI in Mojave after he was hospitalized in 2020.  In the excerpt from the reporter's transcript he cites, however, Wright did not identify clearly the year in which he supposedly met the FBI in Mojave.  At pages 671 to 674 of volume three of the reporter's transcript, Wright provided testimony indicating he claims to have spoken to the FBI on two occasions:  (1) in Mojave in 2016, and (2) in a telephone conversation with an FBI agent in May 2022 or May 2023.

21

longer had to register, advised Wright of this and then sought confirmation from the Department of Justice." Wright also appears to rely upon Detective Cook's testimony that Wright had told the detective the FBI informed Wright he no longer had to register as a sex offender.

Although Wright intimates in his opening brief the trial court erred in "finding that a mistake of law is not a valid defense" to the instant offenses, he does not offer any legal analysis or citation to authority supporting that position. Assuming arguendo a mistake of law is a potential defense to the charge of failing to update annually one's sex offender registration, under the substantial evidence standard, the trial court did not have to credit Wright's and his wife's claims that the FBI and a probation officer told Wright he no longer needed to register, or his wife's claim to have told Wright she believed he ceased to be subject to the lifetime registration requirement.[12]

The trial court instead could reasonably have inferred from the following evidence that Wright knew of his duty to register but elected not to discharge it in July 2021 and July 2022: (a) Detective Cook's testimony Wright told him that Wright was aware he was required to register as a sex offender but had claimed to no longer be subject to that requirement, and (b) certified documents Wright had signed as recently as 2019 acknowledging that (i) he was required to register as a sex offender *for life* and (ii) he had a duty to update his sex offender

---

[12] (See *People v. Thomas* (2019) 39 Cal.App.5th 930, 936–937 [holding that under the substantial evidence standard, the factfinder is entitled to give the "statements [of a witness] whatever weight it deem[s] appropriate, or to disregard them altogether"].)

registration on an annual basis within five working days of his birthday.[13]

In sum, Wright fails to demonstrate the record lacks substantial evidence that (1) he was a California resident in July 2021 and July 2022, (2) he had actual knowledge of his duty to update his registration, and (3) he willfully failed to comply with that obligation.

## C. We Excuse Wright's Forfeiture of His Challenge to the Ancillary Costs and Remand for the Trial Court To Consider Wright's Ability To Pay Those Obligations

In *People v. Kopp* (2025) 19 Cal.5th 1, the Supreme Court held that because "the imposition of ancillary payments raises . . . equal protection issues[,] . . . . upon request, a court must consider a defendant's inability to pay before imposing a court operations assessment (Pen. Code, § 1465.8, subd. (a)(1)) or a court facilities assessment (Gov. Code, § 70373, subd. (a)(1))." (See *Kopp*, at p. 9; see also *id.* at p. 27 [indicating the "court facilities assessment" referenced in *Kopp* is the " 'criminal conviction assessment' " authorized by Gov. Code § 70373].) *Kopp* held that in making this determination, a court must "allow[ ] the

---

[13]  (See *People v. Johnson* (1998) 67 Cal.App.4th 67, 72–73 [indicating that a factfinder may conclude a defendant "willfully" failed to register as a sex offender if he or she had "a 'purpose or willingness' to make the omission"]; cf. *Wallace, supra,* 176 Cal.App.4th at pp. 1098–1099 [holding that "evidence of [the defendant's] repeated notice from [law enforcement] agency representatives regarding his legal duties was . . . sufficient to permit the jury to infer his actual knowledge" of his duty to notify the agency of a change of address].)

parties to present any relevant evidence or argument on the matter." (See *id.* at pp. 30–31.)

At Wright's sentencing hearing, the trial court imposed two court operations assessment fees totaling $80 and two criminal conviction assessment fees totaling $60. On appeal, Wright argues the trial court erred in imposing these ancillary costs without first determining whether he had the ability to pay them.[14]

Although Wright admits his "trial counsel did not object to the court's imposition of the . . . fees on the basis that Wright did not have the ability to pay," Wright asks us to excuse his forfeiture to avoid addressing whether "trial counsel was ineffective for failing to object." In particular, Wright argues his trial counsel's failure to "object to these fees based on [in]ability to pay . . . [constituted] ineffective assistance of counsel because the record was full of evidence Wright suffered homelessness and hospitalizations, some for psychiatric issues . . . ." The Attorney General acknowledges in his brief that Wright told Detective Cook that Wright was transient, and that Wright testified he had been hospitalized in 2020, 2021, and 2022.

To avoid passing upon whether Wright's trial attorney failed to provide constitutionally adequate assistance, we exercise our discretion to excuse Wright's forfeiture of his challenge to the imposition of the ancillary costs. (See *People v. Torres* (2025) 113 Cal.App.5th 88, 92 [noting that a reviewing court may reach the merits of a forfeited claim "[t]o forestall [a] defendant's claim of ineffective assistance of counsel"].)

---

[14] Although Wright contested the $300 restitution fine in his opening brief, Wright withdrew his challenge to that fine in his reply.

The Attorney General claims that the trial court's failure to ascertain Wright's ability to pay the $140 in ancillary costs was not prejudicial, that is, he argues that "any [constitutional] error in imposing the fees and fines was harmless beyond a reasonable doubt." The Attorney General seems to contend that "young and able-bodied convicted defendants [can] pay fines and fees from prison wages or other sources." We find perplexing the Attorney General's invocation of this principle here, given that the evidence that Wright was transient and had repeatedly been hospitalized suggests he might have difficulty earning the funds needed to pay the ancillary costs. Further, although the Attorney General characterizes the "$140 imposed for court operations and criminal conviction assessment fees [as] minimal," we are unable to assess Wright's ability to pay that amount without a more fully developed record on that point. Therefore, we are not persuaded that any constitutional error was harmless beyond a reasonable doubt.

For these reasons, we vacate the $80 court operations assessment fees and $60 criminal conviction assessment fees and remand the matter to afford the trial court an opportunity to determine in the first instance whether Wright has the ability to pay those costs.

## DISPOSITION

We vacate the court operations assessment fees totaling $80 and the criminal conviction assessment fees totaling $60. The judgment is affirmed in all other respects.  In accordance with *People v. Kopp* (2025) 19 Cal.5th 1, the matter is remanded to the trial court to consider defendant Derrick Wright's ability to pay these ancillary costs.

<u>NOT TO BE PUBLISHED.</u>


BENDIX, J.


We concur:



ROTHSCHILD, P. J.



M. KIM, J.